No. 71.—Wm. H. Feagan, plaintiff in error, *vs.* A. H. & D. Cureton, defendants in error.

[1.] The commissioner who executes the commission to a set of interrogatories, is the son of an Attorney for the party taking the testimony. He executes the commission in the office of the father, who cannot be positive whether he was present or not : *Held,* that the depositions ought to be suppressed.

[2.] That a direct interrogatory has not been answered, is not, in the mouth of the cross-examining party, a ground of exception to the execution of the commission.

[3.] On the trial of a claim the plaintiffs in *fi. fa.* offered as evidence notes corresponding with the description of those on which their judgment was founded, and to prove the notes, offered the record of that judgment : *Held,* that the record was inadmissible for that purpose.

[4.] Declarations which accompany any act, and which serve to account for or to explain the act, are admissible with the act ; they are a part of the *res gestæ.*

[5.] If a debtor transfers property to defraud his creditor, the property may be condemned by the creditor, although the transfer is good as against the debtor, and although the condemnation will *work* to his benefit ; but it cannot be condemned if there is any arrangement between the creditor and the debtor, by which the debt is paid off, or by which the debtor is to have the proceeds of the condemned property.

[6.] A written request to charge, is presented to the Court ; the Court reads it over slowly to the Jury, and says, l give you that in charge : *Held,* that if there is any thing wrong in the manner of giving this request in charge, it is something which does not appear.

[7.] A verdict may be corrected in a mere matter of form, after the Jury have dispersed.

Claim, &c. in Muscogee Superior Court. Tried before Judge Worrill, December Term, 1855.

This was a claim interposed to certain negroes levied on as the property of Richard Gibbs, and claimed by Wm. H. Feagan. After the parties had announced themselves ready for trial, and before the case was submitted to the Jury, claimant's Counsel moved the Court to suppress the reading of two sets of depositions, on the ground that there appeared no

venue to their execution. The Court refused, and claimant excepted.

Claimant then moved to suppress another set, upon the ground that one of the commissioners was the son of one of the Counsel in the case. It appeared that the commissioner was himself an Attorney, having his own office. The depositions were executed in the father's office, but without his interference; nor was he informed as to the nature of the testimony. The Court refused the motion, and claimant excepted.

Claimant then moved to suppress another set, on the ground that the direct interrogatories propounded by the plaintiff in *fi. fa.* were not fully answered. The Court refused the motion, and claimant excepted.

Plaintiff in *fi. fa.* offered in evidence certain notes made by Gibbs to plaintiffs, and the original suit and judgment therein, to show the indebtedness to have existed prior to the alleged sale to claimant. Claimant objected, on the ground that there was no evidence of the genuineness of the notes. The Court over-ruled the objection, and claimant excepted.

Plaintiff in *fi. fa.* moved to suppress the reading of that portion of a set of interrogatories which stated the admissions of Gibbs as to his indebtedness to claimant, on the ground that the sayings of the defendant in *fi. fa.* were not evidence against him. The Court granted the motion, and claimant excepted.

Claimant proved by Col. Holt, that Gibbs, though a resident in Alabama, acknowledged service on this suit in Georgia. Plaintiff in *fi. fa.* inquired of witness what Gibbs said at the time; claimant objected. The Court over-ruled the objection, and claimant excepted.

Claimant requested the Court to charge the Jury—

1st. That if they should believe, from the evidence, that the conveyance from Gibbs to Feagan, was fraudulent, and the suit against Gibbs was brought at his instance, and the levy prosecuted for his benefit, then the property is not subject.

2d. That if Gibbs made a fraudulent conveyance, he cannot recover the property, either directly or indirectly.

The Court declined so to charge, and claimant excepted.

The claimant made another request to charge, which the Court read slowly to the Jury, and said—"The Court gives you that in charge, as the law of the case." To this manner of charging, claimant excepted.

By consent of all parties, the Jury were authorized to disperse, after agreeing on a verdict. When delivered by their foreman, next morning, the Court declared it informal, and ordered the Jury to return to their room, instructing them how to place their verdict in form.

This proceeding is excepted to by claimant.

J. JOHNSON; McDOUGALD, for plaintiff in error.

H. HOLT, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The exception to the judgment which over-ruled the objection made to two sets of the interrogatories, that the commissioners had failed to state the place at which they took the interrogatories, was abandoned in this Court.

Hilliard, the commissioner in one of the sets of interrogatories, was the son of Hilliard the Attorney of the party taking the testimony. The commission was executed in the office of the father, who, when examined, could not be "positive" whether he was present at the execution of the commission or not.

[1.] These facts bring the case within the principle of *Beverly and another vs. Burke,* (14 *Ga. R.* 70;) *Glanton vs. Griggs,* (5 *Ga. R.* 424;) and *Tillinghast, Stark & Co. vs. Walton* (5 *Ga. R.* 335.) And that principle requires that the set of interrogatories should have been suppressed. What difference can it make, that the son was himself an Attorney at law?

Can the cross-examining party except to the execution of a commission to take testimony, that the direct questions have not been answered?

[2.] We think not. Each party is entitled to have his own questions answered. He may repeat or adopt the questions of his adversary. If, however, he does, they become his own. If he does not, it is an intimation that he does not want them answered, or that he is indifferent about it.

If the examination of the witnesses be in Court, an objection from one party, that a question of the other has not been answered, will not be heard. A party may even withdraw his question, without the leave of his adversary.

What law is there that prescribes a different rule for the examination of witnesses, out of Court, on interrogatories? We know of none.

The next exception is thus stated in the bill of exceptions: "Plaintiff in *fi. fa.* then opened his case to the Jury, and offered to read in evidence two notes purporting to be signed by said Gibbs; and stated that their object in offering said notes, was to show that said Gibbs was indebted to said plaintiff in *fi. fa.* prior to the transfer by Gibbs to Feagan of the negroes in dispute, and at the time of the sale was largely indebted—in failing circumstances. Claimant objected to said notes being read against him for said purpose, because there is no proof that they are genuine; that they were given for a valuable or good consideration, or that the date they bear is their true date. Plaintiff in *fi. fa.* offered, in connection with said notes, a declaration, in which said notes were described, and the judgment thereon in a certain proceeding had in the Superior Court of Muscogee County, in which said plaintiffs in *fi. fa.* were plaintiff, and said Gibbs defendant, but offered no evidence that said notes were genuine or given for a valuable consideration, or that the date they bore was their true date. Claimant objected to said notes being read separately in evidence to the Jury; also, to said record being read separately or in connection with said notes as offered, and for the purposes offered, for the reasons aforesaid. The

Court over-ruled said objection, and allowed said notes and record to be read to the Jury as offered, and for the purposes offered. The Court over-ruled said objections and allowed said notes and record to be read to the Jury as offered, and for the purposes offered; and thereupon, the claimant excepted."

The introduction of the notes. and the introduction of the record, are both objected to.

The objection to the introduction of the notes, we think, was a good one. The suit being against, not Gibbs the maker of the notes, but Feagan the claimant, the notes did not prove themselves. And the record did not prove them; for that was the record of a case to which Feagan was not a party, and the record of a judgment is not admissible against strangers to the judgment, to prove anything besides its own existence, "and those legal consequences which result from that fact." (1 *Stark. Ev.* 212 ; *Green. Ev.* §527 ; 1 *Phill. Ev.* 332, *and Notes* 582, 583.) This seems to be the general rule. I confess that it is not entirely intelligible to me.

[3.] The notes, we think, therefore, ought not to have been introduced until after the *execution* of them had been proved in the ordinary mode. If that had been proved, they would have become, as I think, *prima facie* evidence that they were founded on a valuable consideration, and that they were made at the time of their date. (*Sto. Prom. Notes,* §§7, 181 ; 3 *Phil. Ev.* (*notes N*) 1453.)

The reasons which were given for the objection to the admission of the record, were the same which were given for the objection to the admission of the notes ; and those reasons were, that it had not been proved that the notes had been executed by Gibbs, that they were founded on a good consideration, and that they were of the date which they bore. If these things had been proved about the notes, the objection to the admission of the notes would have been removed ; and if the notes had been admitted, there would probably have been no objection to the record's going along with them as evidence to the Jury. The objection was, as we understand

it, that the record was not admissible *for the purpose of proving these things* about the notes; not that it was not admissible for any purpose—for the purpose say of showing, by itself, by the allegations contained in it and the judgment thereupon, just such an indebtedness on the part of Gibbs, as that which the notes, if proved, were calculated to show.

And therefore, although we say that we consider the record not to have been admissible for the purpose of proving the execution, consideration and date of the notes, we do not say that we consider it not to have been admissible for any other purpose. As to its admissibility for any other purpose, we say nothing.

The exception to the decision of the Court below, which suppressed that portion of Pullin's depositions which gave the sayings of the defendant in *fi. fa.* was, on the argument, abandoned by the Counsel for the plaintiff.

We think that what Gibbs said at the time when he acknowledged service of the declaration was admissible, as a part of the *res gestæ*.

[4.] It was said in connection with the act acknowledging service, and was what was calculated to explain or to account for that act. (*Green. Ev.* §108.)

The plaintiff in error requested the Court to charge the Jury as follows:

"1st. That if they should believe, from the evidence, that the conveyance to Feagan, by Gibbs, was fraudulent, and that the suit against Gibbs was brought at his instance, and that the levy in the case was prosecuted for his benefit, that then said property is not subject."

"2d. That if Gibbs made a fraudulent conveyance of the negroes to Feagan, that he, Gibbs, cannot recover them or their value by any direct or circuitous method in law; and that if this levy is for the benefit of Gibbs, the said property is not subject."

This the Court refused to charge, and we think, properly. The request has to be taken as a whole, or at least, as made

up of two requests, each of which is a whole. So taken, it amounts, as we understand it, to asking the Court to say that if the condemnation of the property would *operate* for the benefit of Gibbs, the donor or seller of it, the property could not be condemned. And this, we think, it would not have been proper for the Court to say.

[5.] In every case in which a debtor transfers his property to defraud his creditor, a condemnation of the property to satisfy that creditor, would, *in law*, operate for the benefit of the debtor; for it would be the means of bringing about a payment of his debt; and that, too, with what, in law, would be another man's property. In law, the property transferred to defraud the creditor, would become the property of the transferee, as against the debtor himself. As to the debtor, it would be another man's property. But yet, the Statute of the 13*th Elizabeth*, gives the creditor the right to subject the property to the payment of a debt of that debtor's.

But while we say this, we do not mean to say that we think that if Gibbs had paid off the *fi. fa.* or if there existed any arrangement by which the money to be collected on the *fi. fa.* was to be his, and not the creditors, the property could be condemned. We do not think so.

[6.] When a Court gives in charge to the Jury a written request, by reading the request slowly to the Jury, and saying I give you that in charge; if there is anything objectionable in the manner of the Court's giving the charge, it is something which cannot be made apparent by written description; at least, it is something which has not been made apparent, in the description of the manner of the Court contained in this bill of exceptions.

[7.] A verdict may be corrected in mere matter of form, after the Jury have dispersed. (*Judiciary Act of* 1799, *Prince's Dig.* 421; *Amendatory Act of* 1818, *Id.* 442.) And it seems that the correction of the verdict, in this case, was a mere matter of form.

On two grounds only, then, do we think that there should be a new trial. These have been indicated.