## Davis vs. The Central Railroad.

1. Section 3892 of the Code, providing for excepting to the execution and return of commissions, does not apply where answers to interrogatories are brought into court in virtue of a written consent, entered on the interrogatories and signed by the counsel of both parties, in the following terms : "Service acknowledged and copy waived. We waive commission and commissioners, and consent that the witness write out his answers and swear to them before a notary public, and seal them up and deliver them to the clerk, without other formality, and that his answers be read as if regularly taken." If some of the direct interrogatories are not fully answered, the party propounding them ought to take steps to re-examine the witness as to the matters on which the answers are deficient, unless some obstacle to a further examination has intervened.

2. Where the great pressure of the case was on the question whether the child of deaf and dumb parents was deprived of the sense of hearing by an injury received at the hands of the defendant, when it was under two months of age, it devolved on the plaintiff to show that the child was not deaf before the injury, or was not born deaf. A charge to the jury that "if the evidence be equally balanced for plaintiff and defendant on any contested point, they should find that part of the case in favor of the defendant," was not erroneous in view of the special facts.

3. Strictly speaking, the court should not instruct the jury that the interest of a witness affects his credit. The better instruction is, that it may affect his credit, and that it is for the consideration of the jury, they being the judges of whether it does or does not influence his testimony, and if so, to what extent.

4. The suit being by an infant child for damages from wounds and bruises that were cured in a few months, and from the loss of the sense of hearing alleged to have been a consequence of the injury, a charge on the measure of damages in the terms following was substantially correct : "There is no known rule of law by which witnesses can give you the amount in dollars and cents, as the amount of injury, but this is left to the enlightened conscience of an impartial jury. This does not mean that juries can arbitrarily enrich one party at the expense of the other, nor that they should act unreasonably through mere caprice. But it authorizes you to give reasonable damages where the proof shows that the law authorizes it. But the jury should exercise common sense and love of justice, and, from a desire to do right, fix an amount that will fairly compensate for the injury received."

5. The verdict was warranted by the evidence, and is satisfactory to this court, as it was to the court below.

Interrogatories. Practice in the Superior Court. Charge of Court. Witness. Damages. New Trial. Before Judge HILLYER. Fulton Superior Court. April Term, 1877.

Rebecca B. A. Davis, an infant, by her next friend, brought case against the railroad company for $10,000.00 damages, alleged to have been sustained by her on account of a collision of trains, upon one of which she was a passenger, through the negligence of the defendant; she alleged that in addition to other injuries sustained, she had been made permanently deaf and dumb. The defendant pleaded the general issue.

There was no question made as to the collision having been caused by the negligence of the defendant. The great point of contention was as to the amount of damages to which plaintiff was entitled. At the time of the injury she was not quite two months old. She was, at the time of trial, deaf and dumb. Both her parents were deaf mutes. It was asserted, and evidence to that effect was introduced, that the injury on the train caused her unfortunate condition. This was denied, and evidence introduced to the contrary. The testimony was voluminous and conflicting, consisting largely of that of experts.

The jury found for the plaintiff $700.00. The plaintiff moved for a new trial upon the following grounds:

1st. Because the court allowed the defendant to read in evidence the answers of Dr. Abner W. Calhoun to written interrogatories under the following state of facts:

At the request of counsel for defendant, Dr. Calhoun had, on November 21st, 1875, visited the plaintiff near Rockmart, Georgia, for the purpose of making an examination of her organs of hearing. In the spring of 1877, counsel for plaintiff prepared interrogatories for said Calhoun which were crossed by counsel for defendant. On the back thereof was written the agreement copied in the first head-note. On June 14th the witness delivered the interrogatories and answers to the clerk of court. On June 22nd, counsel for

plaintiff indorsed on the package the following: "Plaintiff objects to these interrogatories because the first question in the sixth direct interrogatory is not answered, and because the second, third, and fourth questions in the seventh direct interrogatory are not answered." The trial commenced on June 26th, and terminated June 29th. Before the case was submitted to the jury, counsel for plaintiff moved to suppress and exclude the answers. The motion was overruled.

2nd. Because the court erred in each of the following charges:

(a.) "The burden of proof is on the plaintiff to show that damages or injuries were caused by the defendant, and hurts received by that collision, and if the evidence be equally balanced for plaintiff and defendant on any contested point, you should find that part of the case in favor of the defendant."

(b.) "By our law, the parties litigant in a case are permitted to be witnesses. The interest of a party to a case affects his credit. But this does not mean that the jury should disbelieve a witness who is a party to, or interested in, a suit, but that to a certain extent the witness is affected, and the jury are the judges of his evidence as thus affected. Weigh and compare it with all the testimony in the case, and give to it the value which his relation to the case satisfies the jury it ought to receive."

(c.) "With reference to this case, there is no known rule of law by which witnesses can give to you the amount in dollars and cents as to the amount of injury, but this is left to the enlightened conscience of an impartial juror. This does not mean that juries can arbitrarily crush one party at the expense of the other, nor that they should act unreasonably through mere caprice. But it authorizes you to give reasonable damages when the proof shows that the law authorizes it. But the jury should exercise common sense and love of justice, and from a desire to do right, fix an amount that will fairly compensate for the injury received."

3rd. Because the damages found were unreasonably small,

and because the verdict was contrary to the law and the evidence.

The motion was overruled and the plaintiff excepted.

E. N. BROYLES, for plaintiff in error.

N. J. HAMMOND, for defendant.

BLECKLEY, Judge.

1. So far as appears, there was no obstacle to a further examination of the witness. The direct, not the cross, interrogatories were answered short. The plaintiff, when this was discovered, should have taken steps to have the witness re-examined. It was not the fault of the defendant that the answers were deficient in fullness. Under the consent, the plaintiff was in a situation where the reading of the answers could have been forced upon the defendant. The cross-interrogatories were all answered, and that being so, the defendant could not have hindered the reading. Was it, then, at the option of the plaintiff whether the reading should take place or not? The parties had, by consent, cut loose from the general law. They had made a conventional law of their own; consequently, §3892 of the Code was without application. That section touches exceptions to the execution and return of *commissions*. Here there was no commission; and notice of objection, if delayed as long as that section allows—that is, until just before the case is submitted to the jury—would be unreasonably late. Where the evidence is taken by consent, there should, before announcement of readiness for trial, be notice that the consent has not been duly executed, if its due execution is to be denied. When the parties have agreed that legal formalities shall be dispensed with, and the evidence is in under that agreement, they should each be entitled to depend on the right to introduce it, unless some notice reaches them (before announcing ready) that the right is controverted. Not only commission but commissioners were waived. The witness

was trusted to write out the answers, seal them up, and deliver them to the clerk; and the consent was positive that they should be read as if regularly taken. The plaintiff should have re-examined the witness as to the matters on which the answers were deficient, unless some obstacle to a further examination had intervened.

2. The burden of making out a case was upon the plaintiff. A material part of the case contended for, was the ability of the child to hear before the injury complained of was received. There may be a general presumption that the ordinary human faculties are possessed by every individual. But here there was evidence that the parents of the individual were both deaf and dumb. The presumption e f erred to, thus became entangled with something like another presumption, that like produces like. The charge of the court, "if the evidence be equally balanced for plaintiff and defendant, on any contested point, the jury should find that part of the case in favor of defendant," was not erroneous, the great pressure of the case being on the question whether the child was deprived by the injury of the sense of hearing. There was an adequate recovery for the effects of the injury in other respects.

3. Strictly speaking, the court should not instruct the jury that the interest of a witness affects his credit. The better instruction is, that it *may* affect his credit. Interest and truth may go together. Is there, in the world, an honest man who does not know that he can tell the truth against his interest? Interest is felt as a temptation; but corruption reaches to an excess if, yielding to temptation, it succumbs on every occasion? We suppose it does not. Where there is possible doubt as to the effect of villainy upon veracity, the jury ought to be left to decide it. As coming from the average of society, they know best what to think on such a question. Interest is a great rascal; but is not an absolute reprobate. Its doom is not perdition at all events. It has a chance of salvation. It is not obliged to commit perjury. Doubtless the court meant nothing to

the contrary of this, the inaccuracy being merely verbal. The jury were not mislead.

4. The love of justice! What a great love it is?

5. The verdict was warranted. It is satisfactory to this court, as it was to the court below.

Cited for plaintiff: 46 *Ga.*, 602; 1 *Kelly*, 554; 19 *Ga.*, 404; Valentine's Dig., 314; 2 Swan, 472; Code, §3889; 14 *Ga.*, 697; 6 *Ib.*, 365; 20 *Ib.*, 593; 1 Cranch C. C., 491; 45 *Ga.*, 89; 41 *Ib.*, 117; 49 *Ib.*, 31; 55 *Ib.*, 205; Code, §3714; 8 *Ga.*, 207; 25 *Ib.*, 184; 44 *Ib.*, 229; 55 *Ib.*, 453; 39 *Ib.*, 603; 42 *Ib.*, 62, 82; 43 *Ib.*, 287; 30 *Ib.*, 241 *et seq.*, 476.

Cited for defendant: 49 *Ga.*, 35; 55 *Ib.*, 208; 33 *Ib.*, 11; 41 *Ib.*, 426; 46 *Ib.*, 456, 637; 47 *Ib.*, 229; 48 *Ib.*, 210; 46 *Ib.*, 218; Code, §3749.

Judgment affirmed.