ROSENKRANZ *by Next Friend* v. LINDELL RAILWAY COMPANY, *Appellant.*

108    9
113  422
108    9
119  278
108    9
121  214
108    9
76a   55
108    9
85a  373
108    9
160  637
108    9
90a  530

1.   **Negligence:** STREET CAR RUNNING OVER CHILD.   A child four years of age started to run across a street in the city of St. Louis at about the middle of the block, fell about four feet in front of a horse drawing defendant's street car moving at a slow trot and was run over.   There was evidence that it was dark at the time but sufficiently light to enable one to distinctly see the child half way across the street; that to the driver's knowledge the street at this point was much frequented by children; that the car could have been stopped within a distance of two feet; that the driver was giving no attention to the track in front of him and did not see the child before the car passed over him, *Held*, that the question of negligence was properly submitted to the jury.

2.   ——— : ——— : ———.   The parents of the child were poor and dependent on their labor.   The father was sick in a hospital from which the child and his mother had just returned.   The house was twenty-five feet from the street with an alley leading to the street.   The child was seated on the doorstep eating food which the mother had provided for him.   She went into the house to get him something more to eat and returned in a few minutes and found the child had gone, she started to hunt him and met persons carrying him home, already injured.   *Held*, that the mother was not chargeable as a matter of law with contributory negligence.

3.   ——— : ——— : ——— : INSTRUCTIONS AS TO DAMAGES.   An instruction that if the jury find for plaintiff they should "assess his damages at such a sum as they may believe from the evidence will be a fair compensation to him : *First*, for any pain of body or mind ; *second*, for any loss of earnings after he shall have attained the age of twenty-one years; *third*, for any physical disfigurement or deformity ; *fourth*, for any permanent injury to his body other than disfigurement or deformity which plaintiff has sustained or will hereafter sustain by reason of said injuries and directly caused thereby," cannot be said to be so wanting in perspicuity or clearness that it could have misled or confused the jury.

4.   **Negligence:** PROSPECTIVE DAMAGES.   Prospective damages to adults on account of impairment of earning capacity in the future is a proper element of damages in a case of a personal injury.

5. ———: ———: CHILD. So in such case the jury may take into consideration loss of earnings of an infant, four years old, after he shall have attained his majority, though he has never earned any-thing and though no one can tell with any certainty what his earn-ing capacity will be.

*Appeal from St. Louis City Circuit Court.*—Hon. Jacob Klein, Judge.

Affirmed.

*Alexander Martin* and *Boyle, Adams & McKeighan* for appellant.

(1) The court erred in refusing the instruction asked at the close of the plaintiff's evidence, to the effect that he was not entitled to recover, for reasons particularly stated in the brief following. (2) The verdict is against the weight of evidence, and there is not in the whole record any substantial evidence to support it. For particular reasons see the brief following. (3) There was contributory negligence in the plaintiff's case, and it became more apparent at the close of defendant's evidence. See reasons in brief following. (4) The court erred in giving, at the instance of plaintiff, instruction, numbered 4, relating to measure of damages. *First.* In so far as instruction, numbered 4, directs the jury to compensate plaintiff " for any loss of earnings after he shall have attained the age of twenty-one years, the same is not predicated on any evidence, but directs the jury to speculate, conjecture and guess, and is erroneous. *Second.* The part of said fourth instruction requiring the jury to give damages for loss of earnings after the boy shall have attained the age of twenty-one years, is erroneous, as presenting too remote, conjectural and speculative considerations for the jury's action. *Third.* The same instruction, in so far as it directs the jury to compensate plaintiff " for any loss of earnings after he shall have attained the age of twenty-one years, is erroneous, in that it assumes that plaintiff will live until he arrives at

the age of twenty-one years. *Fourth.* The same instruction, in so far as it directs the jury to compensate the plaintiff " second, for any loss of earnings after he shall have attained the age of twenty-one years " * * * " which the plaintiff has sustained or will hereafter sustain by reason of said injuries," etc., is inconsistent and ambiguous in its language, misleading and confusing. *Fifth.* Said instruction, numbered 4, is erroneous, in so far as it directs the jury to compensate plaintiff, "fourth, for any permanent injury to his body, other than disfigurement and deformity," because there is no evidence whatsoever of any such other permanent injury, and because the same is misleading in suggesting to the jury that there was or might be such other permanent injury.

*A. R. Taylor* and *Alexander Young* for respondent.

MACFARLANE, J.—This action was brought by plaintiff, a minor, by his next friend, against the defendant, a horse-car railroad company in St. Louis, to recover damages for injuries received on the sixteenth day of February, 1888, by the alleged negligence of the defendant.

The charge of negligence made in the petition was, in substance, that the plaintiff was knocked down and run over by one of defendant's cars, and horse attached thereto, while the plaintiff was crossing Chouteau avenue, at a point where said avenue passes house number 2313; that he was seriously and permanently injured thereby, and that he was so knocked down and injured through the negligence of defendant and its servants in charge of said horse car. It was also charged that the driver of the car neglected to observe the requirements of a certain ordinance of the city regulating the operation of street cars, in failing to keep a vigilant watch for children who might be on the track, and in failing to stop the car in time to avoid injuring

plaintiff. It is further alleged that plaintiff's arm was broken in two places, his skull broken, his face and jaws crushed and disfigured for life.

The defendant, in its answer, denies the allegation of the petition, sets out the names of the parents of plaintiff, and alleges that the supposed injuries of plaintiff were caused by the negligence and want of care of plaintiff and his said parents. To this answer the plaintiff replied denying the allegation of counter negligence and admitting the parentage of plaintiff as alleged.

It appears, from the evidence, that plaintiff at the time of his injuries was four years of age, and lived with his parents, in the rear of 2311, Chouteau avenue, on the north side. The family consisted of father, mother, plaintiff and a younger child. They occupied two rooms in a yard back from the street. A narrow alley, or hallway, connected the yard with the street. On this street were two horse railway tracks operated by defendant. The father of plaintiff on the date of the accident was in a hospital, sick. The mother and plaintiff had spent the afternoon at the hospital with the father, and on their return home, between six and seven o'clock, the mother gave plaintiff some milk and bread and he sat on the door steps to eat it. Soon after she directed a neighbor boy to take a bucket and go across the street to a saloon, nearly opposite the entrance to the passway, and get some beer. She then went into the house, to get something more for plaintiff to eat, and while she was gone he followed, or went with the boy across the street, to the saloon. As they returned, the older boy with the beer passed over the street and the plaintiff, following, fell upon one of the railway tracks, about four feet in front of the horse drawing one of defendant's cars, and the horse and car passed over him, inflicting severe injuries.

Upon the trial the jury returned a verdict for plaintiff for $3,500, and judgment was rendered accordingly, from which defendant appealed.

To reverse the judgment defendant insists on three points : *First,* insufficiency of the evidence to authorize the verdict ; *second,* contributory negligence on the part of the parents of plaintiff, and, *third,* improper instructions defining the elements of damage, to be taken into account by the jury in making their verdict.

The questions of the negligence of defendant, and the contributory negligence of plaintiff's parents, were submitted to the jury upon instructions with which no fault is found, and the judgment cannot be disturbed, for the first two assignments of error, unless there is no substantial evidence of negligence on the part of defendant, or unless the evidence shows, as a matter of law, that there was negligence of the parents of plaintiff which directly contributed to his injury.

I.   Did the evidence justify the verdict? Defendant's counsel condenses the evidence into the following summary and insists that it is insufficient to support the verdict : *First.* The plaintiff at the time of receiving the injury in question was crossing the street between six and seven o'clock P. M., on February 16, necessarily after dark.   *Second.* The plaintiff was so crossing the street at about the middle of a block (a good distance away from regular crossings), where the driver of defendant's car would not naturally be looking for pedestrians.   *Third.* The plaintiff started from the sidewalk on one side of the street in a run, and ran suddenly and quickly across the street in front of plaintiff's car. He was only four feet in front of the horse when he stumbled and fell (running fast at the time).   *Fourth.* There is no evidence that the driver saw the boy until he fell, when every possible exertion was made to avoid running over him.   *Fifth.* The horse was going at the time on a "slow trot."

Whatever may be said of the sufficiency of the evidence, as summarized, we think some important facts are omitted.   The evidence also tended to prove that there was sufficient light to enable one to see the child

distinctly half across the street; that the street at this point was much frequented by children which was known by the driver of the car; that the car could have been stopped within a distance of two feet; that the driver never saw the child at all, before the car passed over him; and that the driver was giving no attention to the track in front of him.

Supplementing the summary given by defendant with these facts, we think it very clear that the issue of negligence was properly submitted to the jury. The street was a public highway open to the use of all persons, children as well as adults, at all places and not alone at intersections and crossings of other streets. This point on the street being much frequented by children demanded the greater vigilance on the part of the driver, and the fact that it was growing dark did not release him from watchfulness and caution, but rather demanded increased vigilance. Whether the driver exercised such care, as was required of him in the circumstances, was submitted under instructions to which no objections are made.

II. The same, we think, may be said of the contributory negligence of the parents of plaintiff. The court instructed the jury on this question, in substance, that if the parents of plaintiff, having him in charge, considering their circumstances in life, knowingly or negligently allowed him to stray upon the streets where defendant's cars were constantly running, and where plaintiff received the injuries complained of, such facts show culpable carelessness on their part, and constitute such contributory negligence as will prevent a recovery in this action unless, notwithstanding such negligence on their part, the defendant's driver might have prevented the injury to the child by the exercise of ordinary care and diligence in keeping watch, and stopping the car as required by other instructions of the court.

The evidence showed that the parents of plaintiff were poor people, who depended upon their own labor

for a livelihood. The father was at the time sick in a hospital, and the mother had the care of her two small children in addition to her household duties. The child was seated on the door step eating bread and milk which she had provided him. The house was at least twenty-five feet from the street with a narrow passway between other houses as an access to the street. She went in doors to get him something more to eat, and returned in a few minutes, and he was not there. She started to hunt him and immediately met persons carrying him home, already injured.

Under these circumstances, as was said in *Frick v. Railroad*, 75 Mo. 547, it cannot be held as a matter of law, that the mother actively permitted or consented to the child going upon the railroad track; or that she failed to exercise such care for the safety of the child, as ordinarily prudent persons in her situation deem proper and sufficient in like circumstances. She was not chargeable as a matter of law with contributory negligence, and the instruction which was given at the request of the defendant fairly presented the issue to the jury.

III. On the measure of damages the court instructed the jury that if they found for plaintiff they should "assess his damages at such a sum as they may believe from the evidence will be a fair compensation to him : *First.* For any pain of body or mind ; *second*, for any loss of earnings after he shall have attained the age of twenty-one years; *third*, for any physical disfigurement or deformity; *fourth*, for any permanent injury to his body other than disfigurement and deformity, which the plaintiff has sustained, or will hereafter sustain, by reason of said injuries and directly caused thereby," not to exceed $10,000. This instruction is objected to on the ground that it is "inconsistent and ambiguous in its language, misleading and confusing." It is true, the instruction is not as clear or perspicuous as it might have been, but it does not seem so wanting

in these attributes as could have confused or misled the jury. The instruction confines the jury to the four elements of damage specified therein, and they are separately and clearly stated, and we think the general conclusion, though somewhat ambiguous, could not have been misapplied or misunderstood.

The chief objection to this instruction is made to the damage authorized "for loss of earnings after he shall have attained the age of twenty-one years." It is urged that there was no evidence from which the jury could have inferred what physical capacity for labor plaintiff would have possessed if he had not been injured, or what capacity he will have with his disability, if any, resulting from the injury. The injuries to plaintiff were very serious, one arm was broken and the elbow dislocated, leaving the arm somewhat crooked; the scalp was torn from one side of the head; the skull was fractured, and a piece, as large as a half dollar, removed; and the facial nerve was divided causing paralysis of the face, which drew the mouth around to one side, greatly disfiguring him. The doctor who treated plaintiff was not certain that the injuries to the head would not cause apoplexy, or epilepsy, or that the arm would be permanently restored.

It is well settled that prospective damage to adults, on account of impairment of earning capacity in the future, is a proper element of damages in cases of personal injuries. *Whalen v. Railroad*, 60 Mo. 323; *Pry v. Railroad*, 73 Mo. 124; 2 Sedg. Dam. [8 Ed.] sec. 485. Ordinarily, damages will not be awarded to compensate for losses not yet experienced on mere conjectural possibility that such loss will occur. In the case of an adult proof should be made of "previous physical condition and ability to labor, or follow his usual avocation, as well as his condition since the injury, to enable the jury to properly find the pecuniary damage." 5 Am. & Eng. Ency. of Law, 41, and authorities cited.

What may or may not be done by anyone in the future depends upon so many contingencies that prospective loss of earnings cannot be susceptible of direct and conclusive proof even in case of adults. Nevertheless as has been seen such damages are uniformly allowed. The impairment of the earning capacity of one in his infancy is as great a damage to him, as though he had not been injured until the day he reached his majority. That he would have an equal right to compensation logically follows. This plaintiff had never earned anything, and what his ability to labor or his capacity for earning money in business pursuits will be in the future no one can tell with any certainty. It is properly held in such case, in the absence of the existence of direct evidence, that much must be left to the judgment, common experience and "enlightened conscience of the jurors, guided by the facts and circumstances in the case." *Grogan v. Foundry Co.*, 87 Mo. 326 ; *Nagel v. Railroad,* 75 Mo. 658 ; *Davis v. Railroad,* 60 Ga. 329 ; *Fisher v. Jansen,* 128 Ill. 551 ; *City of Chicago v. Major,* 18 Ill. 349 ; *Railroad v. Miller,* 51 Tex. 275.

Considering the nature of the injuries received by plaintiff and the amount of the verdict, it is evident the jury were moderate and fair to both parties in assessing the damages, and that but little, if anything, was allowed by way of prospective loss of earnings. Judgment affirmed. All concur.