[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10267
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-03343-MHC


JANET WALACE,

Plaintiff-Appellant,


versus


PATRICK S. COUSINS,
Individually,
d.b.a. Patrick S. Cousins Law,
COUSINS LAW, APA,
Individually and Jointly,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 15, 2019)

Before ED CARNES, Chief Judge, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Janet Wallace may find hollow Prince's refrain that he "never meant to cause . . . any sorrow" or "pain."[1]  Her unsuccessful request to have Prince perform at a trade show in Atlanta, Georgia allegedly led not just to sorrow and pain but also a loss of more than $75,000 — and this lawsuit.  Wallace filed this fraud action under Georgia law against Patrick Cousins, a Florida attorney who, the parties agree, "at one time had connections with Prince."  Wallace claims that Cousins fraudulently represented to her that he was willing and able to facilitate Prince's performance at the trade show.  The district court granted Cousins' motion for summary judgment, and this is Wallace's appeal.[2]

I.

For present purposes we review the record and draw all reasonable inferences in the light most favorable to Wallace.  Higdon v. Jackson, 393 F.3d 1211, 1218 (11th Cir. 2004).  For more than two decades Wallace was the show manager for Bronner Bros., Inc., a Georgia business that sells hair care products and organizes trade shows for beauticians.  One of her responsibilities was to book

---

[1] Prince, Purple Rain, on Purple Rain (Warner Bros. 1984).

[2] Although the style of the case refers to Wallace as Walace, both parties agree that her name is Wallace.

entertainment for the trade shows.  In early 2012 Wallace decided to book Prince

to perform at a trade show that Bronner Bros. had scheduled for that August in

Atlanta.  Wallace learned that Prince had recently performed several shows at

Madison Square Garden before sold-out crowds.  So, she thought, booking Prince

would lead to a "sell out . . . in a couple of minutes."  After successfully pitching

the idea to Bronner Bros.' president, Wallace enlisted the help of Melissa Worthen,

an independent event coordinator Wallace had routinely worked with.[3]

In May 2012 Worthen heard from someone in the entertainment industry

that Cousins could help Wallace book Prince for the trade show.  So Worthen and

Wallace met with Cousins later that month to discuss details.  After the meeting

Wallace signed a written agreement between Bronner Bros. and Cousins,

purporting to do so as Bronner Bros.' authorized representative.

The agreement specified that "Cousins is willing and able to facilitate

Prince's performance at Bronner Bros.'" Atlanta trade show.  The agreement also

specified that Bonner Bros. would pay Cousins a "[g]ood faith payment" of

$75,000 "upon signing of th[e] [a]greement."  The next day Wallace wired $75,000

from her bank account to Cousins.

---

[3] Worthen was a plaintiff to this action, but in November 2018 this Court dismissed her
appeal because she failed to file her brief by its due date.  See 11th Cir. R. 42-2(c).

After receiving the $75,000 Cousins promptly emailed to one of Prince's representatives the agreement, which documented the amount of money that Prince stood to earn by performing at Bronner Bros.' Atlanta trade show, and a note stating that "[t]his is what [Bronner Bros.] ha[s] agreed to."  The representative responded: "Received with thanks.  Prince is out of town and we wont [sic] be speaking with him till [he returns] so I hope to have feedback after that."  Hope was not enough; feedback was not forthcoming.  Three weeks later Cousins sent an email to another Prince representative asking whether she could "please give [Cousins] an answer."  Cousins explained that time was of the essence because the date of the trade show was approaching.  He told the representative that Bronner Bros. "ha[s] to move on and get someone else . . . if Prince does not say yes" before morning's end.

The representative responded by email that Prince had received "the offer" but "hasn't had much time to think about it.  [Prince] was discussing it . . . last night, but didn't let [the representative] know if he came to a conclusion."  The representative concluded her email by stating that the offer was "something [Prince] was considering, he just hasn't really had a moment to think about it."

Hours passed.  Then weeks.  With the trade show less than three weeks away, Wallace finally pulled the plug on the Prince plan.  She sent Cousins a letter requesting that he return the $75,000 that she had wired him.  Cousins refused.

4

In October 2014 Wallace filed this lawsuit against Cousins and his law firm in federal court, bringing two claims under Georgia law: breach of contract and fraud. The first claim is that Cousins breached the June 2012 agreement because he failed to secure Prince's performance at the trade show. The second claim is that Cousins committed fraud by stating in the agreement that he was "willing and able to facilitate Prince's performance at" the trade show.[4] The district court dismissed Wallace's breach of contract claim because she failed to comply with the court's order that she amend her complaint to allege facts showing that she was a real party in interest to the June 2012 agreement. See Fed. R. Civ. P. 17(a). Wallace does not appeal that decision.

Cousins moved for summary judgment on Wallace's fraud claim, contending that there was no genuine dispute about the truthfulness of his statement that he was willing and able to facilitate Prince's performance at the trade show. The district court agreed with Cousins and granted him summary judgment. This is Wallace's appeal.

---

[4] Wallace alleged at least four bases for her fraud claim, including Cousins' statement in the agreement that he was "willing and able to facilitate Prince's performance at Bronner Bros.'" trade show. The district court determined that only that basis for Wallace's fraud claim was properly before it because Wallace had failed to state the other bases with particularity. See Fed. R. Civ. P. 9(b) (requiring a plaintiff to "state with particularity the circumstances constituting fraud"). Wallace abandoned any argument she had about that determination because she makes, at best, "only passing references to" it on appeal. Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014). As a result, the only basis for Wallace's fraud claim properly before us is Cousins' statement in the agreement that he was "willing and able to facilitate Prince's performance at Bronner Bros.'" trade show.

II.

We review de novo a district court's grant of summary judgment. Higdon, 393 F.3d at 1218. A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A nonmoving party seeking to establish that there is a dispute of fact must set forth specific facts showing that there is a genuine [dispute] for trial." A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc., 900 F.3d 1270, 1289 (11th Cir. 2018) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). There is no genuine dispute "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Wallace contends that the district court erred in granting summary judgment to Cousins on her fraud claim. "Under Georgia law, which applies in this diversity action, the tort of fraud consists of five elements: (1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." Next Century Commc'ns Corp. v. Ellis, 318 F.3d 1023, 1027 (11th Cir. 2003) (per curiam); see also Stiefel v. Schick, 398 S.E.2d 194, 195 (Ga. 1990) (same). Wallace's fraud claim fails on the first element.

6

Wallace has not carried her burden of setting forth specific facts showing that there is a genuine dispute about whether Cousins' statement that he was willing and able to facilitate Prince's performance at the trade show was false. Wallace sought to carry that burden by submitting with her response to Cousins' summary judgment motion both an affidavit in which she swore that Cousins did not have the ability to facilitate Prince's performance and some of the emails between Cousins and Prince's camp. But the facts in the affidavit are not specific. And the facts in the emails, though specific, do not show that there is a genuine dispute for trial.

The affidavit contains "little more than a brief, conclusory assertion." Leigh v. Warner Bros., 212 F.3d 1210, 1217 (11th Cir. 2000). It asserts that "Prince would never consider working with Mr. Cousins" because their professional relationship "bitterly ended." But the affidavit does not set forth specific facts to support that assertion. And an affidavit that fails to support its assertions "with[ ] specific supporting facts [has] no probative value." Id. (quotation marks omitted).

We are mindful, of course, that the "self-serving statements" that a litigant sets forth in an affidavit "can defeat summary judgment." United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (en banc). Although a litigant's "[i]nterest is a great rascal," it "is not an absolute reprobate." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1246 (11th Cir. 2013) (quoting Davis v. Central R.R., 60 Ga. 329,

7

333 (Ga. 1878)).  But a conclusory affidavit cannot defeat summary judgment. Stein, 881 F.3d at 857.

That leaves the emails, which, to their credit, do "set forth specific facts." Walt Disney, 900 F.3d at 1289.  Those facts do not, however, "show[ ] that there is a genuine [dispute] for trial."  Id.  Indeed, those facts work against Wallace's claim that Cousins fraudulently represented to her that he was willing and able to facilitate Prince's performance at the trade show.  That Cousins promptly emailed the details of the planned performance to one of Prince's representatives suggests that he was willing to get the gig going from the get-go.  And the follow-up communications between Cousins and Prince's representatives undermine Wallace's claim that Cousins did not have the ability to do so.

## III.

Because Wallace failed to set forth specific facts that could lead a rational trier of fact to conclude that Cousins' representation that he was willing and able to facilitate Prince's performance at the trade show, the fraud claim fails.  The district court did not err in granting summary judgment to Cousins.

**AFFIRMED.**

8