KNOX *et al.* v. YOW *et al.*, administrators, and *vice versa.*

91 367
d112 572

1. For a wife to claim a homestead for herself and minor children in certain premises as the property of her husband, and have the claim allowed by final judgment in a contest with a creditor of the husband, is inconsistent with the assertion of title in herself under a previous conveyance from her husband; and while a purchaser at sheriff's sale under a judgment in favor of the creditor takes his title subject to the homestead, he acquires it free from the title of the wife derived from the husband.
2. A written contract to pay two hundred and fifty dollars, which amount in a certain event therein stated is to be reduced to two hundred dollars, but containing no stipulation to pay less than the latter amount in any event, is an unconditional contract in writing for two hundred dollars; and when, in a suit thereon, though brought to recover the full amount of two hundred and fifty dollars, no defence was made, and the court, without the intervention of a jury, rendered judgment for two hundred dollars and interest thereon, the judgment is valid, and may be enforced by execution.
3. A sheriff's sale of land regularly made under a valid *fi. fa.* is not invalidated because, previously thereto, counsel for the plaintiff in *fi. fa.* had agreed with a third person claiming title to the land, or

an interest therein, to postpone the sale, neither the sheriff nor the purchaser at the sale having any knowledge or information of such agreement until after the property had been knocked off to the latter as the highest and best bidder for the same. Under these circumstances, the purchaser would be bound by his bid, notwithstanding both he and the sheriff were informed of the agreement before the purchase money was actually paid, and consequently the purchaser has the corresponding right to pay the same and demand a deed from the sheriff, whose duty it is to accept the money and make the deed with or without the consent of the third person with whom the agreement to postpone the sale had been made.

4. Removal from the State and residence permanently in another State, will terminate the right of a family to a homestead laid off and allowed before such removal took place.

5. Where a sheriff, after selling land under execution and receiving the purchase money, refused to make the purchaser a deed without the consent of another person in possession of the land and claiming title to or an interest therein, and the purchaser obtained that consent by making a parol promise to sell the land to the other person on time, and accordingly the sheriff's deed was then made and delivered, and the purchaser thereupon refused to comply with his promise to the other person, who nevertheless recognized the validity of the sheriff's deed, paid rent to the purchaser for one year, and then abandoned the land and moved from this State, whereupon purchaser entered upon the land by virtue of the sheriff's deed and held exclusive and adverse possession of it for more than seven years, it was too late for the other person to maintain a suit against the purchaser to cancel the sheriff's deed and recover the land. This is true although the purchaser may have fraudulently made the promise mentioned, never intending to keep it, and whether the consent thereby obtained was essential to the making of the sheriff's deed or not, the fraud, if any, being known to the party now complaining thereof more than seven years before suit was brought.

March 20, 1893. Argued at the last term.

Before Judge HUTCHINS. Franklin superior court. March term, 1892.

On the 1st day of January, 1877, J. T. Knox conveyed to his wife a tract of land containing 1,150 acres, more or less, the consideration expressed in the deed being love and affection and the sum of five dollars. On the 19th of April, 1879, one Lester, as administrator of Matthews, obtained a judgment against Knox

upon a written contract made September 21st, 1876, by which Knox contracted to retain Matthews as attorney at law to represent him in a prosecution for robbery then pending in the superior court of Hart county, and promised to pay Matthews the sum of $250.00 as a retaining fee, but in the event he (Knox) should be discharged without trial, the said retaining fee should be only $200.00. A *fi. fa.* issued from this judgment, and was levied, April 28th, 1879, upon about three hundred acres of the land covered by the above mentioned deed. It does not appear what disposition had been made of the balance of the 1,150 acres. A *fi. fa.* for a trifling amount, issued from a justice's court against Knox, was also levied on the three hundred acres, and this land was advertised for sale on the first Tuesday in December, 1879. Shortly before that day, counsel for Lester agreed with Mrs. Knox, who had filed an application for a homestead in the land levied on, alleging therein it was the property of her husband, to which a *caveat* had been filed by Lester as administrator, that the sale should be postponed till this application was disposed of. No notice of this agreement was given to the sheriff, however, who proceeded to sell the land on the day named, and it was knocked off to J. H. Vickery, who had no knowledge or information of the agreement to postpone until after he had bid off the land, but he did know before the sale that Mrs. Knox's application for a homestead in this land was then pending. Before he paid the purchase money, both he and the sheriff were informed of the agreement, but nevertheless Vickery paid the sheriff the amount of his bid, who received the money but subsequently refused to make Vickery a deed to the land, and continued for some time to so refuse until Vickery obtained the consent of Mrs. Knox for him to make the deed. In the meantime she had amended her application for a homestead by claiming

v 91-24

an exemption of the proceeds of the land in the sheriff's
hands as a part of her husband's estate in lieu of the land
which had been sold.    The price at which Vickery bid
off the land was $305.00, but it was subject to an in--
cumbrance of $700.00, which he paid, making the actual
cost to him $1,005.00.    After the sheriff's deed had
been made, Mrs. Knox remained in possession of the
land and paid Vickery the rent of it for one year.    She
then abandoned the possession and removed from this
State to South Carolina ; whereupon Vickery took and
retained adverse and undisputed possession for nearly
nine years before the present action was brought.    Mrs.
Knox's application for a homestead was finally allowed,.
and the homestead set up and established by a judgment
of the superior court, the case having been appealed
from the court of ordinary, the language of this judg-
ment showing it was the intention of the court to allow
the homestead in the land itself, instead of exempting
the proceeds of the sale thereof, which Mrs. Knox had
claimed by the amendment above referred to.    On the
5th day of March, 1889, Mrs. Knox, suing in her own
right and as next friend of her minor son, who was a
beneficiary of the homestead, brought an action against
Vickery for the cancellation of the sheriff's deed and
the recovery of the land for the benefit of herself and
this child.    Among other things, she alleged that the
real consideration of the deed from her husband to her--
self conveying the 1,150 acres of land, was the repay-
ment to her of large amounts which had belonged to
her and which had been appropriated and used by him ;.
that she consented to the making of the sheriff's deed
in consideration of a parol promise made to her by
Vickery that he would sell her the land at the price at-
which he bid it off, make her a bond for titles, and give
her ample time in which to pay for it; that he after-
wards refused to comply with these promises, and on

different occasions increased the amount at which he declared he would be willing to sell her the land, to each of which additional exactions she from time to time assented, but he finally avoided and evaded her, and refused to sell her the land at all. There was some proof to the effect that Vickery obtained her consent to the making of the sheriff's deed by threatening to have her husband, who was a fugitive from justice, arrested if she did not consent, but it can scarcely be doubted, taking her side of the case as true, that she consented because of Vickery's promise to sell her the land. It is not perfectly clear upon what title or right she sought to recover. Her petition mentions the deed from her husband to herself, but it does not distinctly appear that she relied upon it as a basis of recovery. It would rather seem from the allegations of the petition that she relied for a recovery mainly upon her homestead title, and to some extent on the parol contract between herself and Vickery above mentioned. So far as this contract is concerned, it will be noticed that she does not pray for a specific performance by Vickery, but merely alleges that the sheriff's deed would not have been made except by her consent, and that Vickery having fraudulently violated the promise by which this consent was obtained, that deed, for this reason, should be cancelled and set aside, and the land decreed to be the property of herself and her child.

Pending the action J. H. Vickery died, and his administrators, R. D. Yow and C. W. Vickery, were made parties. The trial resulted in a verdict for the plaintiff. The defendants moved for a new trial on many grounds. The judge below granted a new trial because, in his opinion, the fraud complained of by the plaintiff having been discovered by her more than seven years before she brought suit, she was not entitled to recover. To this decision Mrs. Knox excepted, and the defendants, by

cross-bill, filed exceptions, to the refusal of the court to grant a new trial on the remaining grounds of their motion.

J. B. ESTES and W. I. PIKE, for plaintiffs.

McCURRY & PROFFITT, for defendants.

LUMPKIN, Justice.

1. The material facts of this case appear in the foregoing statement prepared by the writer.

Mrs. Knox really abandoned her claim of title to the land in dispute derived through the deed made to her by her husband. As will have been seen, this deed upon its face appears to be a voluntary conveyance; and although in her petition she alleges it was founded upon a valuable consideration, her conduct from the beginning shows that she recognized the fact that it would not be good as against creditors of her husband to whom he had become indebted prior to its execution. Although the judgment in favor of Lester, as administrator of Matthews, was junior to this deed, and although it is apparent that she resisted and desired to defeat the collection of Lester's judgment, she did not rely on her husband's deed to her, but rather chose to apply for a homestead in the land, alleging in her application that it was his property. In this connection it is significant that although this homestead was applied for after the ratification of the constitution of 1877, she expressly states in her application that she desires to take a homestead as against debts contracted under the constitution of 1868. All these acts, and, indeed, her conduct throughout the entire transaction, are utterly inconsistent with the assertion of title in herself under the deed from her husband; and in so far as she sought to recover upon this title (if she does so at all), her action cannot be maintained. She had the election to stand on the title received from her husband, or to ignore that and apply

for a homestead, treating the property as his. She chose to adopt the latter alternative, and her application for a homestead having finally resulted in her favor, she is, if the sheriff's deed to Vickery is valid, conclusively estopped from asserting title to the land in her own right as against that deed. The sheriff sold the land as the property of her husband, and the sale was made at the instance of one of his creditors who contested the homestead with Mrs. Knox, and over whom she prevailed in that contest. As a consequence, Vickery, the purchaser at the sheriff's sale, did not, by his purchase, obtain an absolute title, but a title subject to the result of the application for a homestead, and subject finally to the homestead itself, he having bought while the application was pending, and with knowledge of the fact. Having thus gained this very substantial advantage as against this purchaser, Mrs. Knox cannot repudiate the position she assumed in order to gain it. Whether or not she could recover upon the homestead title, depends upon other facts and legal principles which will be hereafter discussed.

2. As already shown in the statement of facts, the sheriff's sale was made under Lester's *fi. fa.*, and another issued from a justice's court, the amount of which was so small that a sale under it alone would have amounted to nothing, because the levy of it on this quantity of land was, beyond question, grossly excessive. The Lester *fi. fa.* was attacked on the ground that it issued from a judgment rendered by the court without the intervention of a jury, after the adoption of the present constitution, upon a conditional contract in writing. This contract, however, did contain an unconditional promise for the payment of at least $200, and this was the amount of principal for which the judgment was rendered. We do not think there is any doubt about the right and authority of the court to render judgment for this amount on such

a contract. The fact that the suit was brought to recover the full amount, $250, does not, in our opinion, operate to invalidate the judgment. While it is true that the payment of $50 of this amount was conditional, there was no condition at all as to the payment of the $200, and the mere fact of suing for more than the amount for which the court gave judgment is immaterial.

3. The *fi. fa.* in favor of Lester being valid, and the sale of the land under it being regularly made, this sale was not invalidated because of the agreement between the counsel of Lester and Mrs. Knox for a postponement of the sale. If this agreement had been known to the officer or to J. H. Vickery before the sale took place, the question would be entirely different. Neither of them, however, knew anything about it, and so far as they are concerned, it is the same as though the agreement had not been made at all. If Vickery had refused to comply with his bid, there can be no doubt he could have been forced to do so, and he would not have been heard to say that he should not be so compelled because of an agreement to postpone the sale, of which he had no knowledge and which, consequently, could not possibly have influenced his conduct. This being true, and Vickery on his part being bound by his bid, he had a corresponding right to pay the money and demand a deed from the sheriff, and it was the duty of this officer, when the money was paid to him, to make the deed at once, whether Mrs. Knox consented thereto or not. She was no party to the sale; no right of hers could be affected thereby, and she really had no interest in, nor occasion to be concerned about, the transaction between the sheriff and Vickery; but her application for a homestead having been finally allowed, and Vickery, as already stated, having bought subject thereto, because he knew of this application when he did buy, she could recover on the

homestead title unless her right to do so has been lost for other reasons.

4. Notwithstanding the fact that her homestead was set apart and established, her removal from this State and permanent residence in South Carolina terminated the right of herself and her child to hold and enjoy the benefits of this land as property exempt under such homestead. This doctrine has heretofore been definitely settled by decisions of this court. *City Bank of Macon* v. *Smisson*, 73 *Ga.* 422; *Jackson* v. *DuBose*, 87 *Ga.* 761. Having thus abandoned her homestead, it is manifest that Mrs. Knox cannot now successfully assert any title derived therefrom, and whatever would defeat her right to proceed under her homestead title, would also defeat any right which could be asserted for her child as a beneficiary of the homestead.

5. The plaintiff contends, however, that the deed to Vickery from the sheriff was a mere nullity, because the sheriff would not have made it without her consent, and that Vickery, having obtained that consent by fraudulently promising to resell the land to her, is not entitled to any right whatever by virtue of this deed. We have already shown that the sheriff ought to have made the deed to Vickery without regard to her consent; but granting, for the sake of the argument, that this consent was essential to the validity of the sheriff's deed, and was procured by the fraud of Vickery, it would still be necessary for Mrs. Knox to set aside the sheriff's deed (it being apparently a perfect legal title) in order to assert against Vickery any title, in her own right, inconsistent therewith. If she could set that deed aside, she would no longer be estopped from asserting the title derived from her husband as against Vickery, whose possession without the sheriff's deed would be merely that of a wrong-doer or trespasser. With that deed cancelled, Mrs. Knox might recover upon the deed

made to her by her husband, if her declaration sufficiently declared upon it; but the insuperable obstacle in her way is that she is barred by the lapse of time from setting aside the sheriff's deed. If Vickery fraudulently procured her consent to the making of that deed, and thus fraudulently procured the deed itself, she must have known of the fraud when she abandoned possession, and have been aware that upon her leaving the land Vickery would take possession of it, as he in fact did. If Vickery really made the promise she charges him with having broken, it would make no difference that even at the time he made it he fraudulently intended to violate the same. All his acts and conduct constituting the alleged fraud were as well known to her when she left Georgia as they were when the suit was brought, more than seven years thereafter. Whatever may have once been her right to set aside the sheriff's deed and recover this land, that right was barred by the lapse of time before her petition was filed. A prescription under color of title would become complete after the lapse of seven years, and by analogy, the period of limitations applicable to the fraud complained of is the same as that which would apply to an ordinary action for the recovery of the land, viz. seven years from the discovery of the fraud. This principle was expressly ruled in *Cade* v. *Burton et al.*, 35 *Ga.* 280. We are unable to perceive how, in any view of the case, the plaintiff's action can be maintained. Mrs. Knox does not ask for a specific performance of the parol contract which she alleges Vickery made to sell her the land, and beyond doubt it would, under the principle above announced, be now too late for her to have a decree for such performance, even if she had tendered the purchase money and prayed for it.

The court below, instead of granting a new trial upon only one ground of the motion, should have granted it

on other grounds thereof, the nature of which has been indicated in the head-notes. The result is, that in our opinion, the judgment on the main bill of exceptions should be *affirmed*, and on the cross-bill *reversed*.