## CRAWFORD *v.* CRAWFORD, and *vice versa.*

1. The fact that the plaintiff and the defendant are brothers does not of itself create a confidential or fiduciary relation between them. There is no presumption that such relation exists between brothers solely from the fact that they are so related. If a confidential or fiduciary relation exists between brothers, it must be shown by proof, and the burden is upon the party asserting the existence of such relationship to affirmatively show the same.

2. Where one practices upon another fraud and deceit whereby the latter is induced to accept property in settlement of a debt much greater in amount than the value of the property, an injury is done to property and not to the person, and the statute of limitations in reference to actions for injuries to property applies.

3. Where an action is brought to recover damages alleged to have resulted to the plaintiff in consequence of the perpetration of a fraud charged to have been practiced upon him by the defendant, the cause of action, as stated in the declaration, being apparently barred by the statute of limitations, and it is sought to relieve such action of the bar of the statute by alleging that it was brought within the statutory period after the discovery of the fraud, if it does not appear from the petition that the plaintiff used proper diligence to discover the fraud, the petition should be dismissed upon appropriate demurrer thereto.

FEBRUARY 23, 1910.

Action for damages. Before Judge Ellis. Fulton superior court. January 6, 1909.

The plaintiff brought suit against the defendant, making substantially the following allegations: They are brothers, and were born and reared in the same county. The defendant is six years older than the plaintiff. The plaintiff came to Atlanta in 1892, and the defendant a number of years prior thereto, both for the purpose of engaging in the practice of medicine. Prior to the plaintiff's removal to Atlanta he loaned the defendant, in 1890 or 1891, $2,500, and took his note for the same. After such removal, he loaned the defendant various other sums until January 1, 1896, which at that time, with the prior loan, aggregated $5,000, on which date the defendant gave the plaintiff a note for $5,000, due one day after date. The defendant asked the plaintiff to deal in stocks, with the latter's money, with the understanding that the defendant would sustain the losses and they would equally divide any profits made. During the first six months of 1895 the plaintiff invested in stocks for a short time and made profits of $70, one half of which was paid to the defendant. Later on plaintiff lost $800, which defendant refused to pay and has never paid. During the summer of 1896 defendant repeatedly told plaintiff's wife that "he was badly involved financially; that he intended to let his creditors take his property, for the reason that he was unable to pay what he owed." Plaintiff went to defendant on or about October 12, 1896, for the purpose of collecting the money due him. Defendant told plaintiff, that "he owed large sums of money that he was unable to pay; that he was insolvent, and would lose everything that he had;" that defendant's wife owned a lot covered by a mortgage to secure $2,000, which she would convey in settlement of the indebtedness; and that if plaintiff did not accept this proposition, he would lose such indebtedness. Plaintiff was raised with defendant, and had gone to school to the defendant, and had implicit confidence in him. Plaintiff accepted the proposition, and on or about October 12, 1896, defendant's wife conveyed the lot to plaintiff's wife, the latter assuming the mortgage thereon. The lot was worth $3,500, less the amount secured by the mortgage, and plaintiff received only $1,500, less $35 interest paid on the debt secured by the mortgage. Defendant at the time of the conveyance stated that there was $35 interest due on the note secured by the mortgage, and that he did not have the money with which to pay the same; and it was paid by the plaintiff. Plaintiff con-

tinued to rely on and believe the statements of the defendant until September, 1903. "Petitioner alleges that he continued to rely on and believe the statements of said defendant hereinbefore alleged and set forth, until September, 1903, when he went to defendant, knowing that he had been successful, and believing that he had emerged from the insolvency which he had declared to petitioner was hanging over him in 1896, and demanded of the said defendant the payment of the said balance due him. There were a number of conferences between defendant and petitioner; your petitioner urged that he was entitled to the full payment of the money due him, and recalled the statements which defendant had made at the time of the settlement. Finally negotiations and conferences came to an end when defendant denied that he had represented himself to be insolvent, and stated to your petitioner that he was 'twenty-one,' meaning that your petitioner was twenty-one years of age at the time of said settlement. For the first time petitioner's confidence in defendant was shaken; petitioner had never doubted defendant's statements, nor the claim that he was insolvent in 1896, until he denied having made the statements. Your petitioner then employed an attorney and investigated the financial condition and responsibility of the defendant, in 1896, when he claimed to be insolvent and unable to pay his debts. The result of this investigation disclosed to your petitioner for the first time since the settlement was made that said defendant was solvent and able to pay all he owed, including his indebtedness to petitioner, at the time he claimed to be insolvent and unable to pay. Petitioner's attorney then took the matter up with defendant, and finally an agreement to arbitrate the matter was reached; petitioner's counsel prepared a submission to arbitration in writing, which was satisfactory to petitioner, and presented the same to defendant for his signature. Said defendant refused to go further with the arrangement, saying that he had been advised by his attorney that the claims of petitioner were barred by the statutes of limitation. Petitioner avers that each and every statement made by defendant to petitioner's wife as hereinbefore alleged was false when made, and was known by said defendant to be false; and that said statements were made for the purpose of having them repeated to your petitioner and to create alarm upon his part concerning the money due him by said defendant. Your petitioner alleges that the

statements made to him by defendant, that he was owing large sums of money, that he was insolvent and unable to pay what he owed, and that he would lose everything he had, and that your petitioner would lose what defendant owed him unless he accepted the property aforesaid in settlement, were false when made, and defendant knew that they were false when made. Said statements were made for the purpose of deceiving and defrauding your petitioner, and did deceive and defraud him. As a result of the aforesaid false and fraudulent statements your petitioner was defrauded, injured, and damaged to the amount and value of four thousand, three hundred and thirty-five ($4,335.00) dollars. That at the time of said settlement defendant was due petitioner the principal sum of fifty-eight hundred ($5,800.00) dollars; that in said settlement he received property of the value of fifteen hundred ($1,500) dollars only; that the statement of defendant that he was unable to pay the interest on the note was false and was made as a part of the scheme and plan adopted by defendant to deceive and defraud your petitioner. Petitioner alleges, that J. M. Crawford was solvent on the first day of January, 1896, that he has been solvent at all times since said date, and that he is solvent now; that defendant did not owe large sums of money which he was unable to pay in October, 1896; that he was able to pay all he owed on said date; and that he took advantage of your petitioner, and of their relations of confidence, friendship, and relationship which had existed from childhood. Petitioner alleges that on the 12th day of October, 1896, defendant did owe sums of money, but how much and to whom your petitioner does not know; but your petitioner alleges that said defendant was able to pay all such sums, and that he did pay all such sums in full; and that he did not let his creditors take his property because he was unable to pay what he owed at the time, but that he retained his property and paid all he owed. Since the fall of 1903, when your petitioner first discovered the frauds herein alleged, numerous conferences have occurred between defendant and petitioner regarding the matter; and that on the 17th day of October, 1906, they entered into an agreement to arbitrate all differences of a financial nature between them; that the matters herein complained of comprise all differences of a financial nature between defendant and himself; and that the agreement or submission was entered into for the pur-

pose of submitting these matters to arbitration. Petitioner attaches a copy of said submission hereto, marked 'Exhibit A,' and makes the same a part of this petition. Petitioner alleges, that he has fully complied with the terms of said submission; that he selected an arbitrator within the time stipulated, and notified said defendant of the selection and of the name of the party selected, and requested him to make his selection and notify the party selected by your petitioner; but that said defendant refused and still refuses to make his selection. Petitioner avers that said defendant has committed a breach of the said agreement. And your petitioner denies that his action is barred by the statute of limitations; but avers that if there had been any question concerning the limitation, the conduct of the defendant, his agreement above referred to and the breach thereof brought the causes of action within the statute. Petitioner brings this action of deceit, and prays that he be awarded judgment against said defendant for amounts in damages equal to the sums of which the said defendant defrauded him, with interest thereon."

The agreement to submit the matters between the plaintiff and the defendant to arbitration, signed by both of them, referred to no particular debt, but referred generally to "certain matters of financial differences" between them.

The defendant filed a demurrer upon the following grounds: 1. That no cause of action is set out in said petition. 2. That said petition shows on its face that part of the sum claimed, to wit $800, is an alleged debt arising out of a transaction involving speculating in futures, and for that reason is illegal and can not be recovered in law. 3. That said petition shows that as to the other amount claimed to be due by this defendant the same was long since settled by defendant with petitioner, and no indebtedness on account of same now exists. 4. That said petition shows on its face that the statute of limitation has run against any and all of the indebtedness claimed to be due by defendant to petitioner. 5. Defendant further demurs to the petition on the ground that it is really an effort on the part of petitioner to rescind the trade or settlement made with defendant in reference to the claimed indebtedness of five thousand dollars ($5000.00), and that the petitioner discloses that no offer has ever been made by petitioner to rescind said trade or settlement, nor is there any offer in the petition to rescind said trade or settlement and to give back to petitioner the property

which was received under said trade or settlement." The demurrer was overruled. Upon the conclusion of the plaintiff's evidence the court granted a nonsuit, and the plaintiff excepted. The defendant filed a cross-bill of exceptions to the ruling on the demurrer.

*Edgar Latham,* for plaintiff.

*McDaniel, Alston & Black,* for defendant.

HOLDEN, J. (After stating the facts.) 1. The fact that the plaintiff and the defendant are brothers does not of itself create a confidential or fiduciary relation between them. There is no presumption that such relation exists between brothers, arising solely from the fact that they are so related. If a confidential or fiduciary relation exists between brothers, it must be shown by proof, and the burden is upon the party asserting the existence of such relationship to affirmatively show the same. The facts that the defendant is six years the senior of the plaintiff, that they were reared together, and that the plaintiff attended a school taught by the defendant, are not sufficient to establish a confidential or fiduciary relation between them. Nothing appears showing a controlling influence by the defendant over the will, conduct, and interests of the plaintiff, nor does it appear that any trust relation existed between them, such as that of partners, or principal and agent, nor any other relation which would warrant the conclusion that they occupied towards each other what is known in law as a confidential relation. It appears from the position that the plaintiff came to Atlanta some years prior to the transaction complained of, for the purpose of practicing the medical profession, which would indicate that at the time the transaction occurred, on which the suit is predicated, the plaintiff was not only a man of mature years, but engaged in a profession the practice of which requires more than ordinary intellectual capacity. On the subject of confidential relations, see Civil Code, § 4030; Shevlin *v.* Shevlin, 96 Minn. 398 (105 N. W. 257) ; Smith on Fraud, § 102.

2. In the briefs filed by counsel for the defendant in error it is insisted that the plaintiff is barred from his action in any event, inasmuch as the facts giving rise thereto were discovered in 1903 and suit was not commenced until 1906, three years thereafter. They contend that the statute of limitations applicable to the case is that prescribed in the Civil Code, § 3900, which requires

the bringing of actions "for injuries done to the person" within two years after the right of action accrues. We do not consider that deceit practiced upon another whereby he is simply induced to incur a financial loss can be classed as an "injury done to the person." Counsel cite the cases of *Johnson* v. *Bradstreet Company,* 87 *Ga.* 79 (13 S. E. 250) ; *Hutcherson* v. *Durden,* 113 *Ga.* 987 (39 S. E. 495, 54 L. R. A. 811) ; *Gordon* v. *West,* 129 *Ga.* 532 (59 S. E. 232, 13 L. R. A. (N. S.) 549), which they contend make it appear that deceit is an injury to the person. The *Johnson* case, supra, was an action for libel, and this character of action was held to be an action for injury to the person, so as to fall within the provision of law that no action "for homicide, injury to person, or injury to property shall abate by death." In the *Hutcherson* case, supra, it was ruled that an action for seduction was for an injury "done to the person," and was barred unless brought within two years after the accrual of the right of action. And in the *Gordon* case, supra, a similar ruling was made with respect to an action for false imprisonment, malicious use of process, or malicious abuse of process. All wrongs of the character dealt with in these decisions involve an infringment of one of the primary rights of man, namely, that of "security of person." This class of wrongs, notwithstanding the fact that the person upon whom they are inflicted may not suffer any actual physical injury, necessarily violate the right of the injured party to protection in the security of his person; and, as was pointed out in the cases above cited, are properly classed as "injuries to the person." Mr. Hilliard, in his work on Torts, classifies separately "Torts to Persons" and "Torts to Property," treating among the former wrongs of the same and kindred nature with those dealt with in the decisions referred to supra, while among the latter he includes "Fraud" as a wrong to property. "Deceit" is, of course, a species of fraud. See 1 Hill. Torts, 464; 2 Id. 137. We can conceive of instances where fraud and deceit practiced on another would result in an injury to the person; and perhaps it was for this reason that, in arranging the divisions of our Civil Code, fraud and deceit were dealt with in the chapter (Title 9, Ch. 1, Civil Code of 1895), headed "Injuries to Person or Property." In a New York case (Cleveland *v.* Barrows, 59 Barb. 364), which involved an action for fraud and deceit, the contention was made that "The term

'injury to property,' as used in the code, must be construed to mean a direct, corporeal damage or wrong done to specific property, and not to the mere personal rights, or 'rights of property.' " On p. 374, the court said: "By referring to the cause of action as stated in the complaint, it will be seen that it is there alleged that in consequence of the defendant's false and fraudulent statements and representations, the plaintiff was induced to pay, and did pay, $1,900 for the property which was not worth at the time over $900. The presumption is, from the allegations in the complaint, that the plaintiff paid the purchase price in money. What he has paid, therefore, over and above the value of the property purchased, the defendant has obtained wrongfully, by means of his fraud. Fraud is a wrong, and if a party thereby obtains, from another, property, it is an injury to the property of such other, in the same sense, precisely, as though the wrong-doer had taken the property tortiously and converted it."

In Broom's Common Law (9th ed.), 782, it is said: "Torts to the Person, . . include—1. Bodily injuries, whether direct, as assault and battery, or consequential, resulting from negligence or otherwise; 2. Injuries to the health or comfort of an individual; 3. Torts which affect personal liberty." On page 912 of the same work, when speaking of "Torts to Personal Property," the following text is employed: "It may readily be conceded, that where a rightful possession of goods and chattels has once been gained, either by a just occupancy or by a legal transfer, whoever, whether by force or fraud, dispossesses the holder of them is guilty of a tort, remediable by action; 'for,' as remarked by Blackstone, 'there must be an end of all social commerce between man and man unless private possession be secured from unjust invasions; and if an acquisition of goods by either force or fraud were allowed to be a sufficient title, all property would soon be confined to the most strong or the most cunning; and the weak and simple-minded part of mankind (which is by far the most numerous division) could never be secure of their possessions."

The act of 1767, prescribing certain limitations for actions (Cobb's Dig. 559) made no reference to injuries to either person or property. It created a bar of four years for "actions upon the case," and this was the class of actions in which at common law relief might be had for damages resulting from fraud and deceit.

Bishop's Non-Contract Law, § 343. Under that act, therefore, an action of the character we are now dealing with would not have been barred until the expiration of four years from the accrual of the right of action; and four years was treated as the period of limitation governing an action for deceit in the sale of promissory notes with a representation of the maker's solvency, in a case decided by this court in which the right of action accrued while the act of 1767 was of force. *Pledger* v. *Coulter,* 26 *Ga.* 443. That act was supplanted by the act of the General Assembly approved March 6, 1856 (Acts 1855-6, p. 233), from which latter act the limitations now embodied in the code were taken. The act of 1856 made no reference to actions upon the case, but, in prescribing therein certain limitations of actions, made the classifications of "Suits for damages to real estate;" "Suits for injuries to personal property," and "Suits for injuries done to the person," prescribing a bar of four years for the two former, and of two years for the last named. There is nothing in this act to indicate any intention on the part of the legislature to change the period of limitation of four years which previously applied to actions for fraud and deceit (as being actions upon the case) to one of two years, unless it could be said that such actions could not be classed otherwise than as "injuries done to the person." It is the right of action which the statute bars. Deceit alone—which is practised on the person—gives no right of action; there must be a resultant damage to create such right. Civil Code, § 3813, is as follows: "Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action," and section 3814 declares: "Willful representation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action." The damage, or injury (in the present case alleged to have been to the personalty of the plaintiff), is certainly one of the elements of the right of action, and it is this element which determines what limitation shall control. While we have been unable to find any case in our reports in which was raised the point made in the present case, namely, that deceit is an "injury done to the person," and therefore barred in two years, there are several decisions in suits for damages on account of fraud and deceit which treat the period in which this form of action can be brought as being governed by the nature of the damages suffered. See *Cade* v.

*Burton,* 35 *Ga.* 280; *Knox* v. *Yow,* 91 *Ga.* 367 (17 S. E. 654); *Kirkley* v. *Sharp,* 98 *Ga.* 484 (25 S. E. 562); *Little* v. *Reynolds,* 101 *Ga.* 594 (28 S. E. 919); *American Nat. Bank* v. *Fidelity &c. Co.,* 129 *Ga.* 126 (58 S. E. 867). The headnote in the case of *Cade* v. *Burton,* supra, is as follows: "If one makes a sale of land by deed without warranty, but representing it to be his own, and afterwards convey the same land to a bona fide purchaser without notice, the period of limitations applicable to an action against him for the fraud is the same as that which would apply to an action for the land, to wit, seven years from the discovery of the fraud." We conclude that the plaintiff in the present case had a right to bring his action within four years from the time the statute commences to run against his alleged right of action; as the damages sued for resulted from an injury to the personal property of the plaintiff, and not from an injury to his person.

3. The defendant demurred to the petition on the ground that if the plaintiff ever had any right of action, the same was barred by the statute of limitation, and contends that this demurrer should have been sustained. The plaintiff complains that the defendant, by falsely and fraudulently representing that his financial condition was such that he could not pay his debts, induced the plaintiff, who relied upon such representations, to accept property worth $3,500 (and incumbered for $2,000) for a debt amounting to $5,000. The plaintiff alleged that these representations were false and were made for the purpose of deceiving, and did deceive the plaintiff, and caused him the loss of the balance of his debt. This transaction occurred in 1896. The plaintiff alleges that he did not discover that the representations of the defendant were false and that he was solvent and able to pay his debts in 1896 until seven years thereafter, in 1903. It is true that fraud by one, accompanied by damage to the party defrauded, gives a right of action; and it is generally true that where the plaintiff has been deterred or debarred from his action by reason of fraud on the part of the other party, the statute of limitations does not run until the discovery of the fraud. However, fraud which tolls the statute of limitations must be such fraud as could not have been discovered by the exercise of reasonable diligence, where there is no confidential or fiduciary relation existing between the parties, or other facts which will excuse the failure to act. As hereinabove stated, the allega-

tions in the petition do not set forth facts showing a fiduciary or confidential relation existing between the parties to this case.  The petition shows on its face that the plaintiff's right of action was barred, unless it was true that he could not have discovered the fraud by the exercise of reasonable diligence.  The suit was brought ten years after the time the fraud was alleged to have been perpetrated upon the plaintiff.  He alleges that he did not discover the fraud until seven years. after the time of its perpetration. There is no allegation that he could not have discovered it sooner by the exercise of reasonable diligence.  It was held in the case of *Edwards* v. *Smith,* 102 *Ga.* 19 (29 S. E. 129), "Where an action is brought to recover damages alleged to have resulted to the plaintiff in consequence of the perpetration of a fraud charged to have been practiced upon him by the defendant, the cause of action, as stated in the declaration, being apparently barred by the statute of limitations, and it is sought to relieve such action of the bar of the statute by alleging that it was brought within the statutory period after the discovery of the fraud, a mere declaration that the plaintiff 'used all diligence he could' to discover the fraud, without alleging that he was in fact diligent, how and in what manner he was diligent, and the extent of the efforts made by him to discover the fraud alleged, is not sufficient to relieve the case from the bar of the statute of limitations; and the action was properly dismissed upon demurrer."  See also *Thornton* v. *Jackson,* 129 *Ga.* 700 (59 S. E. 905) ; *Sutton* v. *Dye,* 60 *Ga.* 449; 9 Enc. Pl. & Pr. 692; 13 Id. 245; 20 Cyc. 102.  We think the court committed error in overruling the demurrer on the ground that the cause of action was barred by the statute of limitations.  As the court committed error in not sustaining the demurrer and dismissing the petition, everything occurring thereafter was nugatory; and the judgment on the cross-bill of exceptions must be reversed and the main bill, to the order of nonsuit, dismissed.  There is no merit in the other grounds of demurrer, and the court committed no error in overruling them.

*Judgment on cross-bill of exceptions reversed.*

*Main bill of exceptions dismissed.    All the Justices concur.*