## HANNA ET UX. *v.* ISON ET AL.

[No. 10,856. Filed October 14, 1921.]

1. PARENT AND CHILD.—*Partition of Property Between.—Fraud.—Presumptions.*—In an action for the alleged fraud of a father in a partition of property between himself and a daughter, who was of age, the mere showing of the existence of the relation of parent and child did not place upon the father the burden of showing that the transaction was fair and honest, there being no presumption of fraud in the absence of evidence showing a relationship of trust and confidence or the exercise of undue influence by the parent; fraud never being presumed where the parties to a transaction are *sui juris* and are dealing with each other at "arm's length." p. 476.

2. FRAUD.—*Partition of Property.—Representations as to Value.—Jury Questions.*—Whether statements made by the father in partitioning property with his daughter as to the value of the several tracts involved were merely the expression of his opinion or the statement of a fact, *held* questions for the jury. p. 479.

From Monroe Circuit Court; *Robert W. Miers,* Judge.

Action by Verne Hanna and another against Robert A. Ison and others. From an adverse judgment, the plaintiffs appeal. *Affirmed.*

*Rufus H. East, J. F. Regester, Robert G. Miller* and *James W. Blair,* for appellants.

*James B. Wilson,* for appellees.

ENLOE, C. J.—It appears from this record that in February, 1901, one Florence A. Ison died, a resident of Monroe county, Indiana, the owner of seventy-five acres of land; that she left surviving her, her husband, Robert A. Ison, one of the appellees herein, and twin daughters, Delphia and Dulcie, born in July, 1896, as her sole and only heirs at law; that for some three or four years thereafter—the record does not show definitely the time—the father worked in the stone quarry to obtain money to support himself and children, and pay the funeral expenses of his wife, and that during such time the little girls were making their home, for about three years, with an aunt of their father; that the father, about 1904 remarried, and that after said time, the girls lived at home—Delphia until September 1916, when she was married to appellant Verne Hanna, and Dulcie until about August 1917; that in August 1917, the said girls being then more than twenty-one years of age, a partition was made of said lands, the father getting the east twenty-five acres, Delphia the middle twenty-five acres, and Dulcie the west twenty-five acres; that the buildings were all upon the middle twenty-five acres deeded to Delphia; that deeds were duly executed by all the parties interested conveying the lands as above partitioned; that Delphia executed to her sister Dulcie, a note for $600 to equalize the value between their respective tracts of land.

More than one year after the making of said deeds, this action was begun to recover damages from the father, appellee, Robert A. Ison, on account of his alleged fraudulent conduct—false representations as to the relative values of the said several tracts of land— whereby the appellant was deceived and defrauded in the matter of partitioning said lands and the settlement of her said mother's estate. It is averred in the complaint: "That said Robert A. Ison, procured from this plaintiff and said Dulcie G. Ison, said conveyance, through fraud and undue influence, in this to wit:    That said defendant falsely and fraudulently stated and represented to the plaintiff that the portion of real estate so conveyed to her was worth more than the tract so conveyed to him; that she was getting the better part of the farm and that she should pay to her sister the sum of Six Hundred Dollars ($600.) and join in the conveyance to her, and that when said payment was so made, each would receive an equal division of said land in values; that said plaintiff had no knowledge whatever as to the value of said real estate as a whole or in the separate parcels as conveyed." It is also averred in the complaint:    "That on account of the relation of father and daughter she reposed trust and confidence in said defendant, and was thereby led to believe and did believe in the truth of his said statements and representations, and relied upon her father as to the values of said three parcels of real estate and at said time believed the division so made was fair and equitable and so relying upon said defendant, and being wholly without experience in arriving at the value of real estate, and trusting implicitly in her father and believing his statements and representations aforesaid to be true, she was thereby induced to join in the conveyance to her father, and to accept the conveyance to the tract so conveyed to her, burdened and charged with the payment of said sum of

Six Hundred Dollars ($600.) to said Dulcie G. Ison, was thereby wrongfully induced to make such partition of said real estate."

The appellant also sought to recover her proportionate part of the rents and profits for the time intervening since her mother's death, and for timber cut on said lands and sold by her father.

To this complaint the appellees answered first, by general denial, and by affirmative answer in four paragraphs. The appellee, Robert A. Ison also filed a cross-complaint. Replies in general denial to said paragraphs of answer, and answer in general denial to said cross-complaint, closed the issues which were submitted to a jury for trial, resulting in a verdict in favor of appellees, upon which the court rendered judgment. In due time appellants filed their motion for a new trial, which being overruled they now prosecute this appeal, and the only error assigned is the action of the court in overruling their said motion.

The only questions presented to us on this appeal are: (1) That the verdict is not sustained by sufficient evidence; (2) is contrary to law; and (3) error of the court, severally in giving instructions Nos. 11 and 12.

We shall first examine said instructions.

Instruction No. 11 was as follows: "The law favors the settlement of difficulties and controversies by the parties thereto, and when settlements are so made they will be upheld by the courts unless brought about by some unfair advantage taken or used by the one over the other. Fraud practiced in a settlement may be grounds for setting the settlement aside for the recovery of damages if caused by fraud, but fraud is never presumed, it must be alleged and proven by the party asserting it, the same as any other fact, and a fraudulent representation, must have reference to an existing fact, and not be the expression of a mere opinion, an

honest opinion given, however erroneous can never amount to fraud. If a person knowing all the facts relating to a transaction and being a party to the transaction, and with such knowledge acts upon the facts such action will generally amount to a waiver of the 'fraud."

It is insisted that the said instruction was erroneous, under the facts of this case, in telling the jury that "fraud is never presumed but must be alleged and

1. proven." It is insisted that, when, in this case, *the relation of parent and child was shown,* the burden was then upon the father to show that the transaction was in all respects fair and honest.

The authorities do not support this broad statement of the rule. In *Jenkins* v. *Pye* (1838), 12 Peters 241, 9 L. Ed. 1070, in which case a daughter twenty-three years of age had conveyed lands to her father, it was said: "But the grounds mainly relied upon to invalidate the deed, were, that being from a daughter to her father, rendered it, at least, *prima facie* void. And if not void on this ground, it was so, because it was obtained by the undue influence of parental authority. The first ground of objection seeks to establish the broad principle, that a deed from a child to a parent, conveying the real estate of the child, ought, upon considerations of public policy, growing out of the relation of the parties, to be deemed void; and numerous cases in the English chancery have been referred to, which are supposed to establish this principle. We do not deem it necessary to travel over all these authorities; we have looked into the leading cases, and cannot discover anything to warrant the broad and unqualified doctrine contended for on the part of the appellees. All the cases are accompanied with some ingredient, showing undue influence exercised by the parent, operating upon the fears or hopes of the child; and sufficient to

show reasonable grounds to presume, that the act was not perfectly free and voluntary on the part of the child; and in some cases although there may be circumstances tending, in some small degree, to show undue influence, yet, if the agreement appears reasonable, it has been considered enough to outweigh light circumstances, so as not to affect the validity of the deed.

"It becomes the less necessary for us to go into a critical examination of the English chancery doctrine on this subject, for should the cases be found to countenance it, we should not be disposed to adopt or sanction the broad principle contended for, that the deed of a child to a parent is to be deemed, *prima facie,* void. It is, undoubtedly, the duty of the courts carefully to watch and examine the circumstances attending transactions of this kind, when brought under review before them, to discover if any undue influence has been exercised in obtaining the conveyance. But to consider a parent disqualified to take a voluntary deed from his child, without consideration, on account of their relationship is assuming a principle at war with all filial as well as parental duty and affection; and acting on the presumption, that a parent, instead of wishing to promote the interest and welfare, would be seeking to overreach and defraud his child. Whereas, the presumption ought to be, in the absence of all proof tending to a contrary conclusion, that the advancement of the interest of the child was the object in view; and to presume the existence of circumstances conducing to that result. Such a presumption harmonizes with the moral obligations of a parent to provide for his child; and is founded upon the same benign principle that governs cases of purchases made by parents in the name of a child. The *prima facie* presumption is, that it was intended as an advancement to the child, and so not falling within the principle of a resulting trust. The natural

and reasonable presumption, in all transactions of this kind, is, that a benefit was intended the child, because in the discharge of a moral and parental duty."

In *Towson* v. *Moore* (1899), 173 U. S. 17, 19 Sup. Ct. 332, 43 L. Ed. 597, the court, citing authorities to sustain the proposition, said: "The influence for which a will or deed will be annulled must be such as that the party making it has no free will, but stands *in vinculis.*"

In a further discussion of the matter the court said: "The principles established by these authorities may be summed up as follows: In the case of a child's gift of its property to a parent, the circumstances attending the transaction should be vigilantly and carefully scrutinized by the court, in order to ascertain whether there has been undue influence in procuring it; but it cannot be deemed *prima facie,* void; the presumption is in favor of its validity; and, in order to set it aside, the court must be satisfied that it was not the voluntary act of the donor. The same rule as to the burden of proof applies with equal, if not greater force to the case of a gift from a parent to a child, even if the effect of the gift is to confer upon a child, with whom the parent makes his home and is in peculiarly close relations, a larger share of the parent's estate than will be received by other children or grandchildren."

In *Crawford* v. *Crawford* (1910), 134 Ga. 114, 67 S. E. 673, 28 L. R. A. (N. S.) 353, 19 Ann. Cas. 932, it was said: "The fact that the plaintiff and defendant are brothers does not of itself create a confidential or fiduciary relation between them. There is no presumption that such relation exists between brothers, arising solely from the fact that they are so related. If a confidential or fiduciary relation exists between brothers, it must be shown by proof, and the burden is upon the party asserting the existence of such relationship to affirmatively show the same."

In *Roehm* v. *Reed* (1899), 23 Ind. App. 547, 55 N. E. 772, it was said: "The presumption is always in favor of honesty and fair dealing and against bad faith, fraud is a question of fact which must be proved and cannot be presumed."

When the parties to a transaction are *sui juris*, and are dealing with each other "at arm's length," fraud is never presumed but must be clearly proven. When the parties are nearly related by blood, as in this case, but are each *sui juris*, something more than such blood relationship must be shown. There must be evidence showing a relationship of "trust and confidence," as recognized by the law, before any presumption of fraud arises against the defendant.

In this case we find no evidence of any "undue influence," nor do we find any evidence tending to show a relationship of "trust and confidence," such as is recognized by the law. The evidence does show that the appellant Delphia Hanna was given an option of taking the east twenty-five acres, which had no buildings on it, and receiving $1,000, or of taking the middle twenty-five acres and paying to her sister the sum of $600, and that she chose to take said middle tract. Considering the averments of the complaint, and the evidence in this case, the court did not err in giving said instruction. As to what the father said as to the value of said several tracts, whether these statements were merely the expression of his opinion, or the statement of a fact, was a question for the jury. *Culley* v. *Jones* (1905), 164 Ind. 168, 73 N. E. 94.

Instruction No. 12, was relative to the alleged family settlement. There was testimony before the jury that all matters, taxes, timber, improvements, etc., were talked of and considered in making said settlement, and were fully and finally adjusted therein. This was a matter for the consideration of the jury. No specific

infirmity has been pointed out in said instruction, and we see none.

After a careful reading of the entire record, we are fully satisfied that justice has been done; that the evidence supports the verdict, and that the verdict is not contrary to law. The judgment is affirmed.