SINNOTT *et al.*, executors etc., *v.* MOORE *et al.*

MOORE *v.* SINNOTT *et al.*, executors etc., *et al.*

1. Where the law permits the creation of a "spendthrift" trust and a will or deed creates such a trust, the trust is prima facie valid, and the burden is on the beneficiaries to show that they are not within any of the classes described in the statute allowing such trusts to be created.

2. A trust of this character, created in the State of Pennsylvania whose laws allow such trusts, is valid under the laws of this State, provided the beneficiaries are within any of the classes for whom such trusts are permitted here.

3. Real or personal property in this State, devised in a will made in Pennsylvania to trustees for the benefit of certain beneficiaries, with whom the will deals as spendthrifts, passes to the trustees, there being a sufficiency of assets in Pennsylvania to pay all the debts of the estate, and there being no creditors of the estate resident in this State.

4. A valid trust can be created in this State for the benefit of a person sui juris, for life, with remainder over in trust for another person sui juris, for life ; and the fact that there is an ultimate remainder over to a third person which is invalid, under the statute forbidding, under certain conditions, donations to charities, does not destroy or execute the trusts created for the benefit of the life-tenants.

5. Where a will creating such trusts was made and probated in Pennsylvania, and, upon proper proof, was admitted to probate in this State and an administrator with the will annexed appointed, and several suits were commenced against him, and he filed an equitable petition for a construction of the will, and for direction as to how to administer the estate in this State, and praying that the other suits be enjoined, and, at the instance of one of the suitors,

a receiver was appointed to take charge of and administer the estate, if the property is sold under a proper order of court by the receiver, a deed by the latter would convey a good title to the purchaser upon his complying with the conditions of the sale.

6. The proceeds of such a sale, whether treated as realty or as personalty, belong under the will to the trustees.

7. In view of what is above laid down, there is no merit in any of the assignments of error embraced in the cross-bill of exceptions.

Argued June 11, — Decided July 19, 1901.

Equitable petition. Before Judge Brinson. Richmond superior court. April 24, 1901.

It appears from the record that Andrew M. Moore, a resident of the State of Pennsylvania, died in the year 1898. A few days before his death he had made and executed a will wherein he appointed Sinnott, Pennewill, and the Fidelity Insurance Trust & Safe Deposit Company of Philadelphia as his executors and trustees, made several specific bequests to relatives and friends, and then, in the eleventh item, gave all the residue of his estate, both real and personal, to his executors and trustees in trust with direction to divide the property into three equal parts or shares for the use and benefit of his three sons, Albert, Henry, and George. Under this item each son was to receive the income and profits of one of these equal one-third parts of the residue of the estate, not subject to his debts or to be disposed of by him, the receipts of the son alone to be a sufficient voucher for the trustees as to the disposition of the income and profits. In the case of each son this interest was given for life. If he died before the others, the income from his share was to go to the other two sons, and, upon the death of one of the latter, then to the survivor. Upon the death of all of the sons, the property was to go to the executors and trustees with full power and direction to found and maintain such charitable or educational institutions as they might deem best, the institutions to be non-sectarian in their character. The will also gave the executors and trustees full power to sell any real or personal property belonging to the estate, and to reinvest the proceeds as they saw best. This will was, upon application of the executors, admitted to probate in the courts of Pennsylvania. The testator had a city lot, with buildings thereon, in the city of Augusta, Richmond county, Georgia. The executors under the will, residing in another State, were unable as executors to have the will probated in this State. They

therefore, as trustees claiming an interest under the will, offered the same for probate in Richmond county. Upon proper proof the will was admitted to record, and Armstrong was appointed by the ordinary as administrator with the will annexed. Shortly after his appointment, an equitable petition for specific performance was filed against him by White, who claimed to have made a contract of sale for the property with the executors and trustees. Soon thereafter George M. Moore, one of the sons, filed a suit in ejectment against the administrator, claiming an undivided one-third interest in the city lot. He also filed in the court of ordinary a petition to have the letters of administration to Armstrong revoked, on the ground that there was an intestacy as to this land in Georgia, that there were no debts of the testator in this State, and that there were sufficient assets in the State of Pennsylvania to pay all the debts of the estate,— that, there being no necessity for administration, the land descended to him and his two brothers, the only heirs at law of the testator.

After the filing of these suits, Armstrong, as administrator, filed an equitable petition against the executors and trustees, the three sons, and White. In it he alleged the above facts, that the various suits had been filed against him, and that there was a dispute between the sons and the executors and trustees as to the proper construction of the eleventh item of the will; that the sons claimed it was void, first, because the charitable bequest contained therein was made within less than a calendar month before the death of the testator, and the law of Pennsylvania declares such a bequest under such circumstances invalid; second, the trust sought to be created for the benefit of the sons was void under the laws of this State, because the sons were sui juris and not within any of the classes of persons for whom trusts may be created; that the executors and trustees claimed that the item was valid under the laws of this State and of Pennsylvania, except as to the charitable bequest, and that they were entitled to the control of the property or to receive the proceeds of any sale of it that might be had. The administrator therefore prayed the court for a construction of the will, and for direction as to how to administer the estate. He also prayed that the other suits be enjoined and the parties thereto required to interplead in their answers to his petition. George M. Moore answered, setting up substantially the foregoing facts and

contentions as to the invalidity of the will, and also, for reasons stated, praying that a receiver be appointed by the court to take charge of the property until the final decree. The executors and trustees in their answer alleged substantially the facts set forth in the petition of the administrator, and also that the trust, except as to the charitable bequest, was valid, and that the testator knew the character and habits of his sons and made the trust for their benefit. White filed no answer. It was conceded by all parties that the charitable bequest was void under the laws of both Georgia and Pennsylvania. When the case came on for an interlocutory hearing, the trial judge enjoined the ejectment suit brought by George M. Moore, refused to enjoin the proceedings in the court of ordinary for the revocation of the letters of administration, enjoined White's suit for specific performance, and appointed Armstrong (the administrator with the will annexed) as receiver of the court to take charge of and hold the property. In construing the will, the judge held that the charitable bequest was void, and that, as there was no proof by the executors and trustees that the sons were proper subjects of a trust on account of weakness of mind, intemperate habits, or wasteful and profligate habits, " the trust attempted to be created in the several life-estates . . with cross-remainders, being for persons sui juris, also became executed eo instanti." He also ruled that the invalidity of the charitable bequest did not affect the validity of the other parts of the will. He declined to charge the administrator with the rents and profits of the land paid over to the executors and trustees in Pennsylvania before he had received notice of the claim of the sons to such rents and profits. All parties consenting, he directed the receiver to sell the property to White for a certain amount, the deed to be made upon certain conditions not necessary to detail. He ordered that the interest of all the parties be devested from the land and transferred to the fund received from its sale, and that such fund should stand charged in the same manner and to the same extent as the realty, and not, by reason of the sale, be made chargeable as personal property. To these rulings the executors and trustees excepted on many grounds, which will not be stated here but which will be dealt with hereafter in the opinion. George M. Moore was also dissatisfied with some of the rulings of the judge, and filed a cross-bill of exceptions which will likewise be dealt with.

*William K. Miller*, for plaintiffs in error in main bill.

*Frank H. Miller* and *J. C. C. Black*, for George M. Moore.

*D. G. Fogarty, E. H. Callaway, J. R. Lamar*, and *M. P. Carroll*, for other parties.

SIMMONS, C. J.   (after stating the facts as above).   1. As will be seen from the above statement of facts, the 11th item of the will creates what is known as a "spendthrift" trust.   There was no positive or direct proof before the trial judge that the sons of the testator were of weak minds or of intemperate or wasteful and profligate habits.   The answer of the executors and trustees did not specifically allege that the sons came within any of the classes for whom trusts may be created either in Pennsylvania or in Georgia; it simply asserted that the testator knew the character and habits of his sons and accordingly made provision for their benefit.  George M. Moore did not specifically allude to the question in his answer, but relied upon the fact that the executors and trustees did not show that the sons were within the classes for whom trusts may be created.   The trial judge ruled that the burden was upon the trustees to make this proof, and that, as they had not made it and as the law presumes every man to be compos mentis, the spendthrift trust sought to be created must be held to be executed.  This ruling is the subject-matter of the first exception made by the plaintiffs in error.   The law of this State (Civil Code, § 3149) allows property to be devised or bequeathed in trust for the benefit of any minor, person non compos mentis, or any male person of age who is, "on account of mental weakness, intemperate habits, wasteful and profligate habits, unfit to be entrusted with the right and management of property."  The law of Pennsylvania is, we understand, even more liberal in this respect.   See In re Moore's Estate, 48 Atl. Rep. 885, where this same will was under consideration.   When, therefore, a father has a son who belongs to one of the classes enumerated in the code, the law gives such father the right and power to make a will or deed by which he can create a trust of this character.   When he makes such a will or deed, it is prima facie evidence that, in his judgment, such a trust is necessary for the protection of the son and for the preservation of the property.   While it is true that the law presumes every man to be of sound mind and of good habits, it also presumes that a man knows the law and will not willfully violate it in making a disposition of his property.   Thus there is

one presumption against another, and we think the first should yield to the other. When by the disposition made of his property a father declares that in his judgment it is necessary to create a trust for his son, the presumption in favor of the validity of the act of the father overrides the presumption, acted on by the trial judge in his decision, that all men are sui juris. We think the burden is upon the person contesting the trust to show that the named beneficiary does not come within the classes for whom trusts may be created. Indeed, our code seems to place this burden upon the beneficiary or his creditor; for it provides that the beneficiary or creditor may show that, even if the beneficiary has been within one of the classes enumerated, the grounds of the trust have ceased to exist. Civil Code, § 3149. Some person interested must file his petition in the superior court of the county where the trustee resides, and show to the court that the grounds of the trust have ceased. The trust then becomes executed. Moreover, it is scarcely to be presumed that a father would willfully and knowingly, in his last will, place his son in such a class unless he had the best of reasons for so doing. The father has seen the son grow up from infancy, and is familiar with his habits, his expenditures, and his use of money, and no one is better fitted than the father who reared him to determine his capacity to take charge of an estate. We think it can not be said that a father will put upon the records of the country an instrument which classes his son as one incapable of being entrusted with the management of property, unless absolutely convinced that it is necessary to do so. If the father wishes to punish the son for misbehavior, this can be much better accomplished by disinheriting the son or by leaving him but a small portion of the estate. After a careful consideration of the whole matter, we have come to the conclusion that the burden is upon the beneficiaries to show either that the grounds of the trust have never existed or else that they have ceased.

2. The law of Pennsylvania permits trusts which are created for the purpose of protecting the beneficiary from his own improvidence and from the demands of his creditors. Such a trust is valid under the laws of that State, and is also valid under the laws of this State if the beneficiary is within one of the classes designated by our code. If the beneficiaries in the trust under consideration are within these classes, we see no reason why the trust for them, created in Pennsylvania, is not valid and binding in this State.

3. A father, resident in Pennsylvania and owning land in Georgia of which he is about to dispose, is presumed to know the law of this State upon the subject. When, therefore, he creates a trust for the benefit of his sons and places the title in his executors and trustees, the trust will, until some proof is offered to show that the sons do not come within any of the classes enumerated in our code as proper beneficiaries of a trust, be held valid here, and the property devised in trust will pass to the executors and trustees under the will. If the executors and trustees reside in a foreign State, and, for that reason, can not qualify as executors in this State, and an administrator with the will annexed be appointed, the latter stands in the shoes of the executors nominated by the testator, and is entitled to take possession of the property and administer it under the will. The trust being valid, the beneficiaries have no right to interfere with the administration in this State, and, as all parties admitted that there were no debts due by the estate to creditors in this State and that the assets in Pennsylvania were more than sufficient to pay all the debts of the estate and all special legacies, it would be the duty of the administrator to account to the executors and trustees in Pennsylvania for the proceeds of any sale of the property he might make.

4. Whether the foregoing, as to the right to create a spendthrift trust, be correct or not, we are clear that the three sons of the testator have no right to interfere with the administrator with the will annexed in the discharge of his duties in the administration of the property under the will. It will be seen by reference to the statement of facts that the beneficiaries have only a life-interest in the property left in trust for them. The will expressly puts the title to this property in the executors and trustees, with direction to them to pay the income, rents, and profits to the beneficiaries. But it was said that this part of the will was void, because such a trust can not be created under the laws of this State,—that our law does not permit a trust to be created for the benefit of a person sui juris. We concede that a trust can not be created here for the benefit of a person sui juris, without limitation over, but that is not what was attempted in the will now under discussion. This will created a trust for the benefit of each of the sons for life, with limitation after his death in trust for the benefit of his brothers. There is, we think, no statute here or elsewhere which prevents the creation of

a trust for the benefit of one person sui juris for life, with limitation over to another person sui juris. There is quite a difference between creating a trust for the benefit of one person sui juris alone and creating a trust for his benefit for life, with remainder over in trust for another. The case of *Lester* v. *Stephens*, 113 *Ga.* 495, ruled against the validity of the trust, because there was no limitation over. If Mrs. Stephens had given her property in trust for her brother and sisters for life, with limitation over to their children or to other persons, the case would have been quite different. So with the other cases relied on by the defendants in error.

It was also claimed that the trust was invalidated by the fact that the ultimate remainder to charitable uses had failed, the will having been executed within less than a calendar month before the death of the testator. Under the law of Pennsylvania a bequest to charitable uses is void unless made more than a calendar month before the testator's death. In Georgia a bequest to a charitable institution is void unless the will was "executed at least ninety days before the death of the testator." Civil Code, § 3277. It was conceded by all parties that the charitable bequest was void for the reason stated; but we think that this does not make the entire will void. The Civil Code, § 3259 expressly declares that, "If a will be legal in part and illegal in part, that which is legal may be sustained unless the whole will so constitute one testamentary scheme that the legal alone can not give effect to the testator's intention; in such case the whole will fails." This charitable bequest was not illegal when executed, but became inoperative from the fact that the testator died within a few days after the execution of the will. This does not avoid the entire will. The whole testamentary scheme does not depend upon this bequest, and the rest of the will may be given effect without enforcing the bequest to charities. See, as to this matter, In re Moore's Estate, 48 Atl. Rep. 887. Each of the sons may still enjoy his life-estate, and in the event of the death of one his share goes to the others. When all of the sons have died, the testator desired that the property should be devoted to charity. That portion of the will having failed, it would seem clear that there is a resulting trust for the benefit of the heirs of the testator; though that is a matter we need not decide, as we are dealing with the present and not with the distant future. What we do decide is that a trust may be created

for the benefit of a person sui juris for life, with remainder over in trust for the benefit of another person sui juris. That, we hold, is what is done by the 11th item of this will.

5. Under the facts of the case as stated above, we think that a sale of the property in Augusta by the receiver, under a proper order of court, for $40,000 (which all parties agree is a fair price) and a deed made by the receiver would convey the title and interest of all the parties; and this is true whether the beneficiaries under the 11th item agree to the sale or not.

6. The proceeds of such a sale, whether treated as realty or personalty, would belong to the trustees, to whom they should be paid after deducting the necessary expenses incurred in the administration of this portion of the estate of the testator.

7. The exceptions made in the cross-bill of exceptions by George M. Moore, one of the beneficiaries, are contrary to the rulings made above, and we will not deal with them seriatim, or further than is done in the above opinion. If we are right in the rulings made, none of the exceptions made in the cross-bill can be sustained, and the trial judge committed no error against the beneficiaries in any of the rulings there complained of.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed. All the Justices concurring.*