22495. BROWN et al. v. BRYANT, Executor.

SUBMITTED MAY 11, 1964—DECIDED JUNE 1, 1964.

*Weekes & Candler, Davis & Stringer,* for plaintiffs in error.
*Smith, Ringel, Martin, Ansley & Carr, Sam F. Lowe, Jr., Edward F. Kern,* contra.

GRICE, Justice. This review involves the probate of a will. It was probated in solemn form in the Court of Ordinary of DeKalb County and, upon appeal, in the Superior Court of DeKalb County. The denial of the caveators' motion for new trial, following the verdict establishing the will, is the judgment to be considered here. The will is that of Exa Elizabeth Bryant. The propounder was Curtis H. Bryant, brother of the testatrix' deceased husband, and the caveators were J. Scott Brown, R. B. Brown, Mercer Brown, Julius Brown, and Mrs. Susie Brown Breen, her brothers and sister.

The attacks made upon the probate were lack of testamentary capacity and undue influence. On the trial in the superior court, upon motion of the propounder, the court withdrew from the jury's consideration the issue of undue influence, thereby submitting only the issue of testamentary capacity. Following a verdict establishing the will, the caveators' amended motion for new trial, based upon the general grounds and the withdrawing of the issue of undue influence, was denied.

Thus, two questions are before us. First, was there any evidence that the testatrix had testamentary capacity so as to sustain the verdict? Second, was there any evidence of undue influence which should have been submitted to the jury?

■ The first question must be answered in the affirmative. Testimony of two subscribing witnesses and the propounder was unequivocal in favor of testamentary capacity. Only that of the third subscribing witness was to the contrary. Therefore, the verdict was amply supported by the evidence on this issue, and the general grounds of the motion for new trial were properly denied.

■ The second question, as we view the evidence, must be answered in the negative.

The undisputed facts are as follows.

The testatrix' husband died on September 11, 1959. They had no children except one who died soon after birth. Thus, the caveators, her brothers and sister, were her nearest of kin. The propounder was her late husband's brother. He and his wife from time to time visited the testatrix and her husband and after his death continued to visit her.

On November 11, 1959, while the testatrix was confined to her home due to illness, she told a Mrs. Burnette, one of her nurses, that she desired to make a will and that "she wanted everything she had to go to [the propounder] and his wife and their children," and she requested Mrs. Burnette to telephone the propounder that she wanted to give him instructions as to the making of her will, which Mrs. Burnette did. On the same day the testatrix also asked a Mrs. Luke, another nurse, to telephone the propounder of her desire to make a will, and Mrs. Luke did so.

On the following day the propounder went to the testatrix' home. She told him that she wanted a will made, wanted him, his wife and their children to receive all of her property, and wanted him and his wife to handle the estate. Mrs. Burnette was present during part of this discussion.

On the next day the will was prepared in the propounder's office by a business associate who had been admitted to the bar. This draft provided that all of the testatrix' property would be

■

left to the propounder, his wife and their children. Also, it named him as executor and trustee, his wife as contingent executor and trustee and contained provisions as to management of the estate.

The day after that, November 14, 1959, the will was executed at the testatrix' home. The propounder had arranged for the subscribing witnesses, Mrs. Burnette, Mrs. Luke and a Dr. Preston who was a neighbor and minister, to be present. Before its execution, the will in its entirety was read to the testatrix by the propounder, with him watching to see that she was following the reading. At least one witness was present throughout the reading and the others were there a part of the time. When this reading was concluded the testatrix, in the presence of the three witnesses, told the propounder "that was exactly the way she wanted it," and signed the will.

The testatrix died about four and a half months later, March 31, 1960.

The caveators, in support of their contention that there was testimony creating an issue for the jury as to undue influence, rely upon several circumstances.

They point to the physical and mental condition of the testatrix when she executed the will, particularly her leg amputation, loss of sight in one eye, diabetic condition, cancer, and despondent frame of mind. Caveators also contend that provisions of her will are contrary to her desires expressed on other occasions, in that she had said one of the caveators was to have her interest in the home place in Albany, Georgia. They say that the disposition of that property to those not of blood kin, instead of to the caveators, was unreasonable. They further assert that the propounder looked after her business affairs and, therefore, occupied a confidential relationship to her; that he assumed direction of the execution of her will; that he inserted provisions of management of the estate which were not expressly authorized by her; and that his attitude toward Mrs. Luke, one of the nurses, as to her relation with the testatrix was that of one seeking to dominate.

We recognize the rule that "Where a will is attacked as having been obtained by undue influence, since such influence can

seldom be shown except by circumstantial evidence, the attack may be supported by a wide range of evidence, such as a confidential relationship between the parties; the reasonableness or unreasonableness of the disposition of the testator's estate; diseases affecting the strength of mind of the testator; his dealings and associations with the beneficiary; his habits, motives, feelings; his strength or weakness of character; his family, social and business relations; his mental and physical condition at the time the will was made; his manner and conduct; or any other proved fact or circumstance going to show the exercise of undue influence on the mind and will of the testator. On such an issue there may be taken into account the peculiar facts and circumstances surrounding the issue, and acts, conduct, and circumstances may constitute undue influence when exercised on a person of failing mind, poor health, and other mental and bodily enfeeblements, which would not be such undue influence as to affect a will executed by a person of sound mind, good health, and intelligence." *Bowman v. Bowman*, 205 Ga. 796 (2) (55 SE2d 298).

However, we also must adhere to the rule that ". . . opportunity alone is insufficient to establish undue influence as defined in the Code, § 113-208." *Whitfield v. Pitts*, 205 Ga. 259, 273 (53 SE2d 549). See also *Brumbelow v. Hopkins*, 197 Ga. 247 (3) (29 SE2d 42).

Viewing the entire record here, we find no evidence of undue influence. As we appraise the circumstances relied upon by the caveators, they show, at most, mere opportunity for undue influence.

The facts do not support the conclusion that a confidential relationship existed between the propounder and the testatrix. He, according to this record, did not handle her affairs. She did so. The fact that he was her brother-in-law did not create a confidential relationship. Even brothers do not ipso facto occupy that relationship. *Crawford v. Crawford*, 134 Ga. 114 (67 SE 673, 28 LRA (NS) 353, 19 AC 932).

The further testimony relied upon, that of Mrs. Luke to the effect that when the will was executed she did not think that the testatrix knew she was signing a will and that during most

of the time it was being read to her she was drowsy and in a "slight doze," relates to testamentary capacity and to execution of the will, not to the issue of undue influence.

The only occasion that a will was discussed between the testatrix and this propounder was on November 12, 1959, as described in the testimony. It was she, not he, who originated the subject. Furthermore, it was she who expressed the desire that he, his wife and their children have her property. Then, of utmost significance is the fact that the disposition made by the will and read to her was spontaneously declared by her to be "exactly the way she wanted it." These undisputed facts demonstrate clearly the voluntary nature of the will and negate undue influence.

Accordingly, we conclude that the withdrawing of the issue of undue influence from the jury's consideration was proper, and that the trial court did not err in denying the motion for new trial.

*Judgment affirmed. All the Justices concur.*