50054. HOUSTON v. LOWES OF SAVANNAH, INC.

STOLZ, Judge.

This is an appeal from the grant of a motion to open a default. Lowes of Savannah, Inc. is a Georgia corporation with its principal place of business in Savannah, although its officers all reside in North Carolina. The Savannah manager of the business, Carson, was personally served at his office with a complaint by Houston against Lowes of Savannah, Inc. and other defendants. He handed the papers to the office manager with direction to file them. Eighty-eight days later, after having been alerted by a co-defendant, Lowes filed a motion to open the default, alleging that Carson did not recognize the deputy sheriff "as such," that he was told "to hold on to the paper and if anything developed he would be notified"; that he gave it

to the office manager with instructions to file it and the latter did so; that he has only a high school education and has never before been served with process.

The trial judge opened the default and allowed defensive pleadings to be filed. Plaintiff appeals via certificate for immediate review. *Held:*

1. Code Ann. § 81A-155 (b) provides for three grounds for opening a default: (1) providential cause, (2) excusable neglect and (3) "where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened." See *Jordan v. Clark,* 119 Ga. App. 18 (1) (165 SE2d 922) and the Supreme Court's answer to our certified question in the case sub judice. *Houston v. Lowes of Savannah, Inc.,* 235 Ga. 201 (219 SE2d 115).

The order of the trial judge opening the default and allowing defensive pleadings to be filed (R. 24), shows (1) that the trial judge heard evidence and argument of counsel for both parties, (2) that the judge found from all the facts before the court that a proper case had been made for the default to be opened and that the defendant had fully complied with all legal requirements entitling it to open the default.

The statute plainly gives the trial judge the discretion to open a default when he considers a proper case has been made, and the Supreme Court has so held in *Houston v. Lowes of Savannah, Inc.,* 235 Ga. 201, supra. This is materially different from providential cause and excusable neglect, both of which have been defined in our case law. See annotations to Code Ann. § 81A-155 and former Code Ann. § 110-404. This third ground for opening default is broader than the other two. Its essence is the discretion of the trial judge. To impose "excusable neglect" and "providential cause" on a "proper case" decision by the trial judge, is to excise by judicial surgery one-third of the statute.

In the present case the default was opened prior to judgment. Thus, the trial judge had a broader discretion than he would have, had a judgment been entered. *Haynes v. Smith,* 99 Ga. App. 433, 436 (108 SE2d 772). It must be remembered that the trial judge had the parties before him at the hearing on the motion to open default and had

the best opportunity to determine whether there had been a wilful disregard of the process (summons) of the court by the defendant's agent or whether the agent had made an honest mistake relying on the representation of the deputy sheriff at the time the complaint and summons was served.

The trial judge had the opportunity of observing the witnesses, passing on their credibility, and evaluating the full import of their testimony. With only a cold record before us, this court should not merely substitute its judgment for that of the trial judge.

It is urged that this court is bound by the expressions of the Supreme Court in *Sanders v. American Liberty Ins. Co.*, 225 Ga. 796 (171 SE2d 539). We disagree for two reasons: (1) No two cases of this type are exactly alike, thus each one must be viewed independently. This is particularly true in light of the broad discretion reposed in the trial judge in Code Ann. § 81A-155 (b), supra. (2) The *latest* expression of the Supreme Court in interpreting Code Ann. § 81A-155 (b), *Axelroad v. Preston,* 232 Ga. 836, 837 (209 SE2d 178), clearly recognizes the broad discretion the statute reposes in the trial judge: " 'Paragraph (b) of Section 55 of the Civil Practice Act (Ga. L. 1966, pp. 609, 659; Code Ann. § 81A-155 (b)) provides: "At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of a plea or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and announce ready to proceed with the trial." This section is substantially the same as the old law embodied in former Code § 110-404.

" 'When the defendant here complied with the requirements of Section 55 (b) of the Civil Practice Act, and the trial judge from all of the facts determined "that a proper case had been made for the default to be opened," we cannot, under the facts, say that the trial judge abused his discretion even though there was no providential

cause or excusable neglect. See *Brawner v. Maddox,* 1 Ga. App. 332, 337 (58 SE 278), where this court, in reference to the old statute said: "The wording of § 5072 is such that it conveys very ample powers as to opening defaults; not only providential cause, which is broad, and excusable neglect, which is still broader, but finally, as if reaching out to take in every conceivable case where injustice might result if the default were not opened, the section goes on to say, 'where the judge from all the facts shall determine that a proper case has been made,' etc. We cannot say that the learned judge abused the discretion as insisted by plaintiff in error." See also *Butler & Co. v. Strickland-Tillman Hardware Co.,* 15 Ga. App. 193 (82 SE 815); and *Strickland v. Galloway,* 111 Ga. App. 683 (143 SE2d 3) followed in *Clements v. United Equity Corp.,* 125 Ga. App. 711 (188 SE2d 923).' *Foster Co. v. Livingston,* 127 Ga. App. 317, 318 (193 SE2d 626), certiorari denied by this court.

"...The opening of the default caused no delay in the trial of this case, resulting in harm or prejudice to the plaintiff, as the record reveals that the injunctive relief sought by plaintiff has been granted on an interlocutory basis by the trial judge who opened the default in the case. Under these circumstances, we cannot say the trial judge abused his discretion in permitting the default to be opened under the third ground of the statute so that the case can be finally determined on its merits as contended by both parties. Cf. *Cate v. Harrell,* 128 Ga. App. 219 (196 SE2d 155). Therefore, the judgment of the trial court will be affirmed." Here again, we recognize that the facts in no two cases are exactly alike, but in *Axelroad,* supra, neither providential cause nor excusable neglect is made the basis of the Supreme Court's decision. Moreover, *Sanders v. American Liberty Ins. Co.,* supra, was by a divided court (Justice Felton dissenting), whereas *Axelroad v. Preston,* supra, is a unanimous decision. See also *Strickland v. Galloway,* 111 Ga. App. 683 (143 SE2d 3) (1965), which was written before *Sanders v. American Liberty Ins. Co.,* supra (1969); and *Foster Co. v. Livingston,* 127 Ga. App. 317 (193 SE2d 626) (1972), written after *Sanders* supra, and particularly the opinion of the court on the motion for rehearing in *Foster Co.,* supra,

beginning at page 319 concerning *Sanders,* supra. See also *Florida East Coast Properties v. Davis,* 133 Ga. App. 932 (213 SE2d 79), where default was opened after judgment had been entered.

2. There is yet another reason why we should affirm the trial judge. His order prevents a default in an ·extremely serious case. It gives the parties their "day in court." It allows the case to be decided on its merits—which is what our system of justice is all about.

This case is a contradiction of the usual situation before us in that we have the plaintiff urging strict construction of the Civil Practice Act and that the defendant's case be resolved on a technicality. In turn, the defendant now urges broad construction of the Civil Practice Act and resolution of the case on its merits. We suppose it all depends on whose ox is being gored. The trial judge exercised his discretion and took the high road. We are unable to hold that as a matter of law he abused his discretion.

*Judgment affirmed. Bell, C. J., Quillian, Clark and Marshall, JJ., concur. Pannell, P. J., concurs in the judgment only. Deen, P. J., Evans and Webb, JJ., dissent.*

ARGUED JANUARY 14, 1975 — DECIDED
NOVEMBER 26, 1975.

*Burt, Burt & Rentz,* for appellant.
*Perry, Walters, Lippitt & Custer, S. B. Lippitt, Jr.,* for appellee.

EVANS, Judge, dissenting.

How does a defendant open a default? Consider the defendant, Lowes of Savannah, Inc., who waited 88 days after service before offering to file defensive pleadings, and whose delay in filing was *not for providential cause,* and whose *neglect was inexcusable.*

According to the majority opinion in this case, it is as easy as falling off a slippery log. It is simple! It is easy! No problems! All that is required of the defaulting defendant is that he tell the judge of the court that his agent was deceived by the deputy who served copy of summons and

complaint upon him, that the deputy sheriff told defendant's manager "to hold onto the paper and if anything developed he would be notified." Then the defendant is home free; he is excused for his grossly negligent conduct in not reading the document (a document so important that a deputy sheriff came to defendant's place of business and personally handed the document to defendant's manager).

And, most important, it is not necessary that defendant's *manager or business manager* (the only two persons present besides the deputy at time of service) be required to give sworn testimony by affidavit or otherwise that the deputy sheriff made this misleading and false statement to defendant's manager.

And, quite important, it is not necessary to show that the *business manager did not read the document* before filing it away. It is sufficient if nothing be stated as to whether the business manager read the document or not, especially as it is recited that Earl Carson, the manager, did not read it.

And it is not necessary that the deputy sheriff be sworn so he may tell the judge whether or not he did indeed make any such unlikely, highly improbable and false statement to defendant's agent at time of service—that he would be notified if anything developed.

Nor is it necessary to show that some fiduciary or confidential relationship existed between defendant's agent and the deputy sheriff, whereby said agent had the right to rely on the deputy's statement (if he made such statement). The deputy and defendant's agent dealt with each other at arm's length; neither had the right to rely upon the other.

And in presenting a motion to open default, it is not necessary that the defendant corporation support same by the affidavit of any person or agent who was present at the time of the service and thus knew the facts; it is sufficient if the affidavit of an officer of the corporation, who resides in North Carolina, and who does not even pretend that he was present, or that he had knowledge of the facts (one Leonard G. Herring), make affidavit that the motion to open default is true.

And it is not necessary to show that defendant's

agent was an illiterate person, or a moron, or one of less than average intelligence. According to the majority opinion, defendant's agent had the absolute right to rely on the alleged statement of the deputy, and to fail to read the copy of summons and complaint, and to just lay it away, and wait until he was notified by the sheriff's office that he should do something about the suit that had been served upon him.

Surely, no defendant need remain under the disadvantage of being in default, with the guidelines for opening the default so clearly laid out in the majority opinion in this case! As soon as the defaulting defendant can get before the judge, and tell him that he was deceived by the deputy who served the papers, presto! the default is opened! It might be well not to bring the deputy sheriff to the hearing, as the deputy might confuse the issue by not remembering or even denying that he made such a high-handed, unauthorized, and completely unlikely statement to defendant. The best method may be to keep the issues as simple as possible, as was done in the case at bar.

I am in whole-hearted disagreement with the majority opinion.

1. The motion to open default in this case could not be legally granted, because there was no sworn testimony or evidence by any agent of Lowes of Savannah, Inc., defendant, who had knowledge of the facts. The motion alleges that defendant is a corporation and all of its *officers* reside in North Carolina. The motion further alleges that the service of complaint and summons was made upon the *manager of the corporation's business, to wit, Earl Carson.* The only other agent alleged to be present (and who would have the opportunity for knowing the facts) was *the office manager,* who was not alleged to be an officer of the corporation (R. 9-10).

Thus, the only two persons other than the deputy sheriff who had knowledge of the facts surrounding the service were Earl Carson, manager, and an unnamed agent, as business manager.

It is alleged that the deputy sheriff told Carson to "hold onto the paper and if anything developed he would be notified later," and that *without reading the complaint,*

Carson handed it to the office manager to be filed away. But *it is not alleged, and we wish to emphasize this point, that the office manager did not read the summons and complaint.*

But to go a step further, who made affidavit to the motion to open default? Not Earl Carson, who was present; nor the unnamed office manager, the other agent who was present. But the affidavit is made by one who had no knowledge whatever of the facts—whose information is necessarily second-hand—and whose affidavit is based on hearsay—the affiant being one *Leonard G. Herring, an officer* of Lowes of Savannah, Inc. Remember all of the officers of the corporation reside in North Carolina. Can it be actually contended that the default in this case was properly opened when: 1. It is not alleged that the office manager did not read the summons and complaint before filing them away. 2. Leonard G. Herring makes affidavit to the motion but as it is not shown or alleged that he was present or had personal knowledge of the facts, his affidavit is but hearsay, and totally without probative value. Code § 38-301; *Woods v. Martin,* 212 Ga. 405 (93 SE2d 339); *Jones v. State,* 50 Ga. App. 97 (176 SE 896).

On certiorari, the Supreme Court has decided there are three (not two) grounds for opening a default, to wit: 1. Providential reason for not filing in time. 2. Excusable neglect. 3. Or where the judge determines that a proper case has been made for opening the default. What is a *proper case?* What rules are to be used in deciding whether a *proper case* has been made out? If the plaintiff is a felon and a vile creature not fit to associate with honest men, could that possibly be urged as a *proper case* for opening the default against the defendant, and slapping the plaintiff down—because after all, the plaintiff has never done any deed and he is all-evil? Or could it be that if the defendant is one of the best men in the county, one who loves everyone and does good for everyone, could that possibly be considered a *proper case* to open the default against this good man, who happens to be a defendant in default?

No, despite the general, loose and almost meaningless language in the statute, it must be construed to mean *that the judge must exercise a legal discretion to*

*determine whether there is providential cause, reason or excusable neglect.*

A judge is always required to exercise a legal discretion in deciding a mixed question of fact and law, and in order to do that, some facts must be proven before him which warrant the exercise of such legal discretion. For a clear discussion of what a "legal discretion" is, see *Miller v. Wallace,* 76 Ga. 479 (2a) and *Griffin v. State,* 12 Ga. App. 615, 616 (5) and 620-621 (3) (77 SE 1080).

2. But under the circumstances of this case no possible legal discretion could have allowed the opening of the default; and the order opening same should be reversed.

First of all, the motion to open was supported only by an affidavit of an officer of the corporation who was not present on the day of service by the deputy sheriff, and consequently did not know whether the deputy sheriff deceived the agent served. It is not alleged that he had knowledge of the facts. The *manager* and *office manager* who were present made no affidavit and no appearance. The deputy sheriff was not accounted for. The affidavit of an agent of a corporation, unless he has knowledge of the facts, is completely useless and without probative value. See *Hemphill v. Ruckersville Bank,* 3 Ga. 435, 444.

And although the motion to open default shows there were two agents of defendant corporation present at time of service, both with title of "manager," it is alleged only that one of them never did read the summons, but it is not alleged that the other manager did not read it. How should the judge have construed such a motion?

At the very outset, the judge was bound by certain undisputed rules of law and undisputed facts, as follows:

It has been held time and again that mere "misunderstandings" and "misapprehension," even when brought on by a ruling of the judge, will not suffice to excuse neglect in failing to file defensive pleadings. See *Deering Harvester Co. v. Thompson,* 116 Ga. 418 (2) (42 SE 772). Also see *Tower v. Ellsworth,* 112 Ga. 460 (1, 2) (37 SE 736).

The law presumes every man to be sane. *Community Loan &c. Corp. v. Bowden,* 64 Ga. App. 175 (1) (12 SE2d 421). The law presumes that every man knows the law.

*Sinnott v. Moore,* 113 Ga. 908, 912 (39 SE 415). It is a fundamental principle that "one who can read must read." *Gossett & Sons v. Wilder,* 46 Ga. App. 651 (7) (168 SE 903). And there was no contention here that defendant's agent was unable to read. All officers of the law are presumed to have discharged their official duties. *Kirk v. State,* 73 Ga. 620 (3a). In business dealings, absent a fiduciary relationship, one party has no right to rely on a statement by the other, as they must deal at arm's length, even where they are brothers. *Crawford v. Crawford,* 134 Ga. 114 (67 SE 673); *Brown v. Bryant,* 220 Ga. 80, 83 (137 SE2d 36). A concise and clear expression of this principle is found in *Lewis v. Alderman,* 117 Ga. App. 855 (3) (162 SE2d 440), to wit: "Where no fiduciary relationship exists, misrepresentations as to a question of law will not constitute remedial fraud, since every one is presumed to know the law 'and therefore, can not in legal contemplation be deceived by erroneous statements of law, and such representations are ordinarily regarded as mere expressions of opinion.' *Swofford v. Glaze,* 207 Ga. 532, 535 (63 SE2d 342). [Cits.]"

The deputy sheriff, who is alleged to have misled defendant's agent, was not brought into court so he could admit or deny making the statement that the papers he was serving were unimportant, and that no action would be required of defendant unless and until later notified. There was no suggestion here that defendant's agent was other than an adult, endowed with normal faculties, which he is presumed to possess. See *Holcombe v. State,* 5 Ga. App. 47 (4a, b) (62 SE 647); *Davis v. Central R.,* 60 Ga. 329, 333. *And it is not contended that the agent was illiterate.* Where a party has evidence within his power (such as the deputy sheriff) and omits to produce it, and relies on that which is of a weaker nature, the presumption arises that the charge against him is well founded. Code § 38-119. The defendant was an *interested party,* and testimony of its North Carolina officer as to what the deputy said was most *improbable,* and for these two reasons is governed by Code § 38-107. Further, this agent was not present at time of service. But if he had produced the deputy sheriff, who was not interested in the outcome of the case, this would have been higher and

stronger evidence as to what the deputy actually told defendant's agent, at time of service, if anything. With no fiduciary relationship, how was the defendant's agent excused from *reading* the papers? The complaint very plainly advised defendant that it had *thirty days* in which to file and serve defensive pleadings. Code Ann. § 81A-301. Besides, the agent was presumed to know the law. And the law, as we have pointed out, provides that "he that can read must read." And although the deputy was not accounted for in the hearing, all officers are presumed to discharge their duties properly, and for a deputy sheriff to serve a suit on a defendant, and then tell him that he need not pay any attention to it unless later notified would have been *a violation of his duties.*

Finally, we come down to a vital phase of the matter, which is the unreasonable and improbable contention by defendant that its agent was told by the deputy sheriff that the papers were unimportant and he would be notified later if action was required of him. Did any deputy sheriff ever tell a defendant that, upon serving him with a suit? And if he did—being a stranger to defendant's agent—would this affect the agent? *It would have startled him,—excited him—would have made him extremely wary, careful and cautious, and the reading of the complaint and summons, cover to cover, would have been the first thing the agent did when the deputy left him.* "Beware the Greeks bearing gifts." All human beings practice this motto whether familiar with the Seige of Troy or not. When a stranger offers us a gift, we always look the gift horse straight in the mouth, because we are suspicious of this unsolicited largess from one whom we do not even know.

Surely it is evident that no case was made before the trial judge which authorized him, in his discretion, to open the default.

For these reasons, there were no proper reasons advanced for opening the default; the negligence of defendant was not providential; that negligence was wholly inexcusable, the judge of the lower court erred in allowing the default opened, and I would reverse the lower court; and therefore respectfully dissent in this case.

I am authorized to state that Presiding Judge Deen

and Judge Webb concur in this dissent.