## 67006, 67007. MUSCOGEE REALTY DEVELOPMENT CORPORATION et al. v. JEFFERSON COMPANY; and vice versa.

DEEN, Presiding Judge.

The two captioned cases grew out of a dispute as to how large a commission, if any, was owed by Dr. J. B. Chastain and Muscogee Realty Development Corporation (Muscogee) to the Jefferson Company (Jefferson), a real estate brokerage firm, in connection with the sale of a piece of a property owned by Midtown Partners (Midtown) and sold to Muscogee and Chastain through the Gentry Company (Gentry), another real estate firm having close ties with Midtown. Jefferson, plaintiff below, alleged that it was the procuring cause of the sale and hence entitled to the commission because its agent, Zastrow, had contacted Chastain prior to the sale to inform him of the availability of the subject property; that Gentry knew of the contact but nevertheless consummated the sale to Chastain, as an officer of Muscogee, at a price of $1,110,000; and that the three defendants, acting in collusion, refused to pay Jefferson a commission.

The "Exclusive Listing Agreement" between Jefferson and

Midtown provided that for forty-five days from the date of the agreement Jefferson would have the exclusive right to sell the subject property, with an 8% commission payable upon sale on the specified terms; i.e., for "$1,300,000 cash or such other sum or upon such other terms as may be acceptable to Owner." The printed form contract contained the language, "Owner agrees that during the continuance of the contract . . . he will not sell or attempt to sell the said property, either directly or indirectly, except through Agent [Jefferson]." The agreement also contained the typewritten stipulation, however, that no commission would be paid if during the term of the agreement the owner should sell the property "without the assistance of a real estate broker."

Following consummation of the sale Jefferson brought an action against Chastain, Muscogee, and Gentry, alleging that a commission of $88,000 was due and that the three named defendants had fraudulently conspired to deprive Jefferson of the commission. The complaint was served on Chastain and Muscogee on September 4, 1981, and on Gentry on September 9. The attorney who represented all three defendants failed to note the difference in the dates and filed all three answers on October 6, 1981, which was one day after the close of the statutory thirty-day period with respect to Chastain and Muscogee and three days prior to the close of the period with regard to Gentry. Jefferson apparently did not notice this default, and filed no motion for a default judgment.

The case proceeded to trial in the usual manner, and on January 3, 1983, after both sides had made opening statements, the court noted the discrepancy in dates and declared defendants Chastain and Muscogee in default. On that same day the defaulting defendants paid all costs, and the next morning moved to open the default. The court denied the motion and held that they were deemed to have admitted the truth of the facts alleged against them in the complaint. Jefferson voluntarily dismissed Gentry as a party defendant and also dismissed its bad faith claims against the remaining defendants as to attorney fees and punitive damages. The court ruled that since by defaulting the defendants had admitted liability, the only evidence admissible at trial would be that which went to the issue of damages. At the close of the evidence both plaintiff and appellant unsuccessfully moved for directed verdicts on the damages issue. The jury returned a verdict of $33,000 in favor of Jefferson, and both sides moved for judgments notwithstanding the verdict, the defendants also moving for a new trial. The court denied all motions. Both plaintiff and defendant appeal from this judgment.

In case no. 67006 Muscogee and Chastain enumerate seven errors, four of which allege abuse of discretion on the part of the trial

court in declining to open the default. The remaining three enumerations assign as error the exclusion of certain evidence pertaining to the amount of commission and to the fraud charge, and the court's failure to grant a directed verdict. In case no. 67007 Jefferson assigns as error the court's denial of its motions for a directed verdict and for judgment notwithstanding the verdict. *Held:*

1. Appellants' enumerations in case no. 67006 regarding the trial court's denial of its motion to open the default are without merit. The controlling statutory provision is OCGA § 9-11-55 (b) (Code Ann. § 81A-155), which states as follows: "At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial." Contrary to appellants' contention, the trial court treated the default in the instant case as a pre-judgment default, as contemplated by the cited statute, and applied the proper statutory standard for the exercise of his discretion in determining whether or not opening of the default should be allowed. See Davis and Shulman's Georgia Practice and Procedure, 4th ed., § 8-8.

Because in the instant case the default was a pre-judgment rather than a post-judgment default, the trial court's statutory discretion was broader than it would have been for a post-judgment default. *Florida East Coast Properties v. Davis,* 133 Ga. App. 932 (213 SE2d 79) (1975); *Haynes v. Smith,* 99 Ga. App. 433 (108 SE2d 772) (1959). This is so particularly with respect to the third statutory ground, "a proper case," which has been less narrowly defined judicially than have the first two grounds, and *a fortiori* when the default has caused no delay prejudicial to the plaintiff. See *Broadaway v. Thompson,* 127 Ga. App. 600 (194 SE2d 342) (1972); *Clements v. United Equity Corp.,* 125 Ga. App. 711 (188 SE2d 923) (1972). See also *Houston v. Lowes of Savannah,* 235 Ga. 201 (219 SE2d 115) (1975); *Houston v. Lowes of Savannah,* 136 Ga. App. 781 (222 SE2d 209) (1975). There is a long line of cases in which the court sustained the opening of a default in fact situations in which the causes of the default were comparable to, or seemingly less excusable than, those in the instant case. See, e.g., *Copeland v. Carter,* 247 Ga. 542 (277 SE2d 500) (1981); *Axelroad v. Preston,* 232 Ga. 836 (209 SE2d 178) (1974); *Stevens v. Wakefield,* 163 Ga. App. 40 (292 SE2d 516) (1982); *Cobb County Fair Assn. v. Boyle,* 143 Ga. App. 754 (240

SE2d 136) (1972); *Avant v. Patrick,* 133 Ga. App. 708 (213 SE2d 14) (1975).

On the other hand, there is also a line of cases holding that the court's discretion comes into play only when and if the presence of one of the three statutory reasons (providential cause, excusable neglect, "a proper case") has been established; and that, absent at least one of these, the court has no discretion but must enter a default judgment. In *Johnson v. Durrence,* 136 Ga. App. 439, 440 (221 SE2d 652) (1975), this court reasoned, "Surely a trial judge cannot just act willy-nilly and without the exercise of any legal discretion whatever, open the default, and give as his reason that *a proper case has been made, when no case at all has actually been made,* proper or otherwise. If this be true, then nothing whatever need be shown which gives the trial judge a *legal discretion to act.*" Absent a showing of specific facts authorizing an exercise of discretion, such exercise is improper. *Johnson v. Durrence,* supra; *State Farm Mut. Auto. Ins. Co. v. Pritchett,* 124 Ga. App. 815 (186 SE2d 510) (1971); *Minnesota Mut. Life Ins. Co. v. Love,* 120 Ga. App. 502 (171 SE2d 361) (1969). In fact, to open a default absent such a showing can itself amount to an abuse of discretion. *Dukes v. Burke,* 139 Ga. App. 583, 585 (228 SE2d 729) (1976).

In the instant case the trial court stated in response to a query by defense counsel, "The court realizes it has discretion in the field, but under these particular facts and circumstances, I am saying that the court finds itself unable to exercise discretion in favor of the movants." In other words, the court had concluded that in the particular fact situation of this case the defense had failed to measure up to the standards set forth in OCGA § 9-11-55 (b) (Code Ann. § 81A-155), whether with respect to the three reasons enumerated in the subsection's first sentence or with respect to the four conditions set forth in the second sentence of the subsection: i.e., showing made under oath, meritorious defense, offer to plead instanter, and an nouncement of ready to proceed with trial. Although in the instant case three of these conditions were clearly complied with, it may well be that the trial judge did not consider the defense "meritorious" and therefore believed that he had no discretion to open the default. Such a determination would itself be within the court's sound discretion. "'Having a defense to an action is not in itself a ground to opening default.'" *B-X Corp. v. Fulton Plumbing Co.,* 140 Ga. App. 131, 132 (230 SE2d 331) (1976); *Taurus Productions v. Maryland Sound Industries,* 155 Ga. App. 147 (270 SE2d 337) (1980).

"Because a refusal to open a default is discretionary, such refusal will not be overturned unless an abuse of discretion is manifest . . ." Id. at 148; *Cheeks v. Barnes,* 241 Ga. 22 (243 SE2d 242) (1978); *Sheet*

*Metal Workers Int'l Assn. v. Carter,* 144 Ga. App. 48 (240 SE2d 569) (1977), rev'd. on other grounds, 241 Ga. 220 (244 SE2d 860) (1978). The trial court did not abuse its discretion in declining to open the default.

2. Because we have determined in Division 1, supra, that the trial court did not abuse its discretion in declining to open the default, we hold that the evidence at trial was properly confined to the issue of damages.

3. There was conflicting evidence in the instant case as to the conditions under which the commission would be computed and paid. The evidence did not demand the verdicts sought by the opposing parties. The trial court did not err, therefore, in denying the motions for directed verdicts in case nos. 67006 and 67007 and sending the case to the jury, or in denying the motion for judgment notwithstanding the verdict in case no. 67007. OCGA § 9-11-50 (a), (b) (Code Ann. § 81A-150); *Georgia Dept. of Human Resources v. Montgomery,* 248 Ga. 465 (284 SE2d 263) (1981); *Findley v. McDaniel,* 158 Ga. App. 445 (280 SE2d 858) (1981).

*Judgments affirmed. Banke and Carley, JJ., concur.*

DECIDED OCTOBER 14, 1983 —
REHEARING DENIED OCTOBER 31, 1983 — 

*Carlton M. Henson,* for appellants.
*Lee R. Grogan, Lee R. Grogan, Jr.,* for appellee.